UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*FILED*

DANIEL G. MALCHMAN          :        NO.: 3:01 CV 1877 (MRK)

v.                         :

CITY OF NORWICH            :        SEPTEMBER 21, 2004

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c) and D.Conn.L.Civ.R. 56, the defendant, CITY OF

NORWICH, submits the following memorandum of law in support of its Motion for

Summary Judgment dated September 21, 2004. The defendant incorporates by

reference its Local Rule 56(a)1 Statement with attached exhibits dated September 21,

2004.

## I.    STATEMENT OF FACTS.

The plaintiff, Daniel G. Malchman, has brought the present action against the

City of Norwich claiming that his equal protection rights were violated because the

Norwich police have failed and refused to investigate crimes against him and therefore

placing him and his family outside the protection of the laws.

Malchman and his family reside at 32 Tanglewood Drive. Complaint, ¶¶1, 15-18.

John A. Bogdanski, the alleged criminal perpetrator, lives nearby at 27 Tanglewood

Drive. Malchman claims that Bogdanski is "out to get him" for personal injuries

Bogdanski suffered by way of exposure to some toxic substance when Bogdanski let

space from Malchman at Ponomeh Mills. Def. L.R. 56 Stmt., ¶¶2-3, 6-7. Some

background is in order to properly frame Malchman's complaint. He is a successful

businessman in the Norwich area in a variety of commercial ventures, real estate and

other enterprises.  Notably, he has been involved in the purchase and renovation of many of the old mills in the Norwich area.  Malchman was arrested on September 14, 1998 and accused of violating a number of environmental protection statutes by State of Connecticut. Def. L.R. 56 Stmt., ¶¶2-4.  In particular, Malchman was accused of improperly dumping sand grit that was contaminated with lead or lead paint. Id. Bogdanski is a witness in the criminal action on behalf of the State of Connecticut. Def. L.R. 56 Stmt., ¶¶6-7.

A.    **Incidents Identified by Malchman.**

The plaintiff points to a number of incidents in the complaint as evidence that he was "placed outside the protection of the laws." Complaint, ¶¶6-14.  The first incident identified by Malchman was the discovery of a spray–painted swastika on his motor vehicle. Complaint, ¶6.  This incident apparently occurred on evening of October 31 – November 1, 1996.  Malchman believed his neighbor, John A. Bogdanski, committed the act but had no proof.  It is undisputed that the Norwich police investigated the crime and were unable to establish probable cause for the arrest of anyone. Def. L.R. Stmt., ¶25; Ex. D, Affidavit of Molis, ¶9, Attachment #1.

The next incident allegedly occurred one year later on evening of October 31 – November 1, 1997 when Malchman discovered dog feces in his mailbox. Complaint, ¶7. Malchman believed his neighbor, John A. Bogdanski, committed the act but had no proof.  It is undisputed that the Norwich police investigated the crime and were unable to establish probable cause for the arrest of anyone. Def. L.R. Stmt., ¶27.

The next incidents occurred nearly one year later on October 26 and November 3, 1998 when Malchman received "harassing and threatening mail" sent to him by an

- 2 -

unknown party. Complaint, ¶8. Malchman suspected Bogdanski sent the threatening

correspondence. It is undisputed that the Norwich police investigated the crime and

were unable to establish probable cause for the arrest of anyone. The Norwich police

arranged to have the letters fingerprinted and examined by the Connecticut State Police

Forensic Laboratory. The Norwich police obtained handwriting exemplars from

Bogdanski, his girlfriend and the Malchmans. The scientific examination was

inconclusive. It is undisputed that the Norwich police investigated the crime and were

unable to establish probable cause for the arrest of anyone. Def. L.R. Stmt., ¶¶32-33.

The next incident allegedly occurred on April 12, 1999 when Malchman received

another harassing and threatening letter. Complaint, ¶9. The Norwich police arranged

to have the letters fingerprinted and examined by the Connecticut State Police Forensic

Laboratory. The handwriting comparison was not completed because Bogdanski and

his girlfriend refused to cooperate. It is undisputed that the Norwich police investigated

the crime and were unable to establish probable cause for the arrest of anyone. Def.

L.R. Stmt., ¶34.

Some time in 1999 or 2000, Malchman claimed that Bogdanski chased him at

high speeds in his car. Complaint, ¶10. Malchman complained to the Norwich Police

Department. Malchman claimed he went directly to the Norwich Police to complain. He

does not, however, have any personal knowledge of what the police may have done

about this incident. Def. L.R. Stmt., ¶39.

On July 26, 2000, Malchman complained that Bogdanski violated a no-contact

order that existed in the criminal action against Malchman. Complaint, ¶12. At the

location of the incident, Malchman was unable to produce a copy of the order. The

- 3 -

officers interviewed Bogdanski and other witnesses. Bogdanski denied instigating any confrontation with Malchman and insisted that Malchman started the incident. Malchman's meal companion's statement confirmed that Bogdanski did nothing until Malchman stated that Bogdanski was "a sick man." The investigating officer received a copy of a letter that stated a no-contact order existed but did not receive an actual copy of the order. Def. L.R. Stmt., ¶44; Ex. D, Affidavit of Molis, ¶13, Attachment #5.

On July 28, 2000, Malchman complained of receiving a threatening phone call which he attributed to Bogdanski. Complaint, ¶13.  It is undisputed that the Norwich police investigated the crime and were unable to establish probable cause for the arrest of anyone.  Def. L.R. Stmt., ¶45.

On August 25, 2000, Malchman complains that a rubber penis was left in his driveway. Complaint, ¶14.  He was not present and it was discovered by his wife. The penis was fingerprinted and taken as evidence.  It is undisputed that the Norwich police investigated the crime and were unable to establish probable cause for the arrest of anyone.  Def. L.R. Stmt., ¶48.

## B.     Malchman's Actual Consumption of Police Services.

To say that these incidents support Malchman's claims that no one was arrested evidence an unofficial policy, practice or custom of placing Malchman outside the law is disingenuous given Malchman's actual consumption of police services over time. From January 1, 1990 through January 10, 2003, the Norwich police responded to at least 70 incidents involving Malchman. Def. L.R. Stmt., ¶14.  Nearly all were the result of his calls for service.  Forty-seven incidents were significant enough to generate written incident reports and supplemental reports.  Even that number of calls does not

- 4 -

accurately represent the actual number of hours or days that the Norwich police

serviced Malchman's claims. These calls for service include the above-described

incidents, investigation of burglary of his business, assistance in connection with the

repossession of goods, illegal dumping on his property, stolen vehicles and the like.

Def. L.R. Stmt., ¶15-68.

### C.    Malchman's Complaint.

It is undisputed the sole defendant is the City of Norwich. Def. L.R. Stmt., ¶9.  No

officers or employees of the City of Norwich are named as defendants in this case.

Malchman's operative allegations in the complaint are as follows:

> 15.    In the manner described above, the Norwich Police Department, and its individual members, have over a period of years engaged in a consistent, persistent and widely-known pattern and practice of failing and refusing to protect the plaintiff from criminal conduct, placing him outside the protection of the law.
>
> 16.    Said pattern and practice has been so widespread, so consistent so persistent and so well-known, that it constitute the official policy of the defendant.
>
> 17.    The refusal to afford the plaintiff the protection of the law has been intentional and conscious. In this manner the plaintiff and his family have been treated differently from all other citizens of the City of Norwich.
>
> 18.    In the manner described above, the defendant has deprived the plaintiff of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Constitution of the State of Connecticut.

Complaint, pp. 4-5.

Therefore, the sole federal claim is based on Malchman's Fourteenth

Amendment equal protection rights only.  There are no other federal claims –

constitutional or otherwise.  Malchman also claims his Connecticut constitutional rights

were violated but he does not identify which rights were violated.  Importantly, the

complaint does not allege any other causes of action based on state law, tort or

otherwise.  Malchman seeks to impose liability on the City of Norwich based on the

doctrine of Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). Absent

any involved individual defendant with final policy-making authority, Malchman must show that the conduct in question was so pervasive that City officials were deliberately indifferent to his rights.

The defendants, CITY OF NORWICH, now moves for summary judgment on the plaintiff's complaint dated October 1, 2001.

## II.    LAW AND ARGUMENT.
### A.    STANDARD OF REVIEW.

Federal Rules of Civil Procedure 56(c) requires the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party. Id. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Servi-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Samuels v. Smith, 839 F.Supp. 959, 962 (D.Conn. 1993).

- 6 -

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256, 106 S.Ct. 1570, 94 L.Ed.2d 763 (1987); <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 25 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." <u>Applegate v. Top Associates, Inc.</u>, 425 F.2d 92, 96 (2d Cir. 1970).

Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay that does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. <u>See</u>, <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); <u>Beyene v. Coleman Security Services, Inc.</u>, 854 F.2d 1179 (9th Cir. 1988); <u>Edward B. Marks Music Corp. v. Stasny Music Corp.</u>, 1 F.R.D. 720 (S.D.N.Y. 1941).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Id. at 322-23. Accord, Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim). See also Schacht v. Wisconsin Dep't of Corrs., 175 F.3d 497, 503-4 (7th Cir. 1997) (noting summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of act to accept its version of events"); rev'd on other grounds, 524 U.S. 381 (1998).

### B. NO EQUAL PROTECTION CLAIM EXISTS FOR FAILURE TO PROVIDE POLICE PROTECTION ABSENT CONNECTION TO MEMBERSHIP IN A PROTECTED CLASS; MALCHMAN HAS NO CONSTITUTIONAL RIGHT TO HAVE BOGDANSKI OR ANYONE ELSE ARRESTED.

Although couching the complaint as a failure to protect claim, Malchman's complaint is really claiming that the City of Norwich Police Department has failed to arrest John Bogdanski and other unidentified individuals who have allegedly perpetrated crimes against him and his family. It is generally settled that there is no constitutional duty on the part of the state to protect members of the public at large from crime, see Martinez v. California, 444 U.S. 277, 284-85 (1980), there has been considerable disagreement among the lower federal courts as to whether and when a duty to protect may arise by virtue of a "special relationship," outside of the custodial context, between the state and a particular individual or group.   Absent a special relationship, Malchman's claims fail.

In DeShaney v. Winnebago County Dept. of Soc. Servs, 489 U.S. 189, 109 S. Ct. 998 (1989), a majority of the Supreme Court held that nothing in the due process clause of the Fourteenth Amendment creates an affirmative duty on the part of the state to

- 8 -

"protect the life liberty, and property of its citizens against invasion by private actors."
109 S. Ct. at 1003. The Court concluded that "[a]s a general matter, . . . a State's failure
to protect an individual against private violence simply does not constitute a violation of
the Due Process Clause." Id. at 1004.

Chief Justice Rehnquist, writing for the majority, expressly rejected the argument
"that once the State learns that a third party poses a special danger to an identified
victim, and indicates its willingness to protect the victim against that danger, a 'special
relationship' arises between State and victim, giving rise to an affirmative duty,
enforceable through the Due Process Clause, to render adequate protection." Id. at
1004 n.4.

Malchman could never have framed the present complaint utilizing a substantive
due process theory as was advanced in DeShaney. Instead, Malchman's complaint is
framed in terms of equal protection, rather than substantive due process.
Notwithstanding such a posture, the Supreme Court did not leave such a claim
applicable to Malchman's situation in DeShaney. Although no such argument was
raised in DeShaney, the Court noted that the Equal Protection Clause of the Fourteenth
Amendment would be violated by any selective denial of protective services to "certain
disfavored minorities." 109 S. Ct. at 1004 n.3. See, e.g., Mody v. City of Hoboken, 959
F.2d 461, 467 (3d Cir. 1992) (rejecting plaintiff's claim where "evidence necessary to
show constitutionally discriminatory police action in failing to provide cognizable
minorities with protection from crime [was] absent."); Baugh v. City of Milwaukee, 823 F.
Supp. 1452, 1460-67 (E.D. Wis. 1993) (rejecting plaintiffs' argument that city had policy
of denying equal housing inspection and code enforcement services based on race).

- 9 -

There is an emerging line of cases in which municipal liability is based on policies used in handling domestic abuse cases, where plaintiffs claim that such policies violate their rights under the equal protection clause of the Fourteenth Amendment. *See, e.g.,* Soto v. Carrasquillo, 878 F. Supp. 324, 328 (D.P.R. 1995) (discussing and citing cases where "a growing number of plaintiffs have turned to section 1983 claims to allege an equal protection violation for a police department's failure to provide protection from domestic violence."), *aff'd sub nom,* Soto v. Flores, 103 F.3d 1056 (1st Cir. 1997) ; McDonald v. City of Chicago, Nos. 94 C 3623, 94 C 3624, 1994 WL 732865, *4 (N.D. Ill. Dec. 23, 1994) (not reported) (alleged practice of treating "domestic violence abuse reports from women with less priority than other crimes" sufficient to state equal protection claim); Bartalone v. County of Berrien, 643 F. Supp. 574, 577 (W.D. Mich. 1986); Thurman v. City of Torrington, 595 F. Supp. 1521, 1527-29 (D. Conn. 1984). *See also* Hynson v. City of Chester, 864 F.2d 1026, 1027 n.1 (3d Cir. 1988) (collecting cases).

Nothing alleged by the plaintiff would allow him to "get around" the limitations imposed by DeShaney. As a threshold matter, he has not made claims based on substantive due process and even if he did, Malchman does not fit into any of the exceptions. Malchman, however, obliquely attempts to fit himself into the conditions observed in the footnote in DeShaney. 109 S. Ct. at 1004 n.3. He makes this effort by reciting his membership in the Jewish faith and alleging that his neighbor is a "virulent anti-Semite." It is undisputed that Malchman does not claim that his faith has anything to do with the City of Norwich Police Department's claimed "failure" and "refusal" to investigate crimes against him. Instead, Malchman identifies a relationship between a

- 10 -

retired police officer, Robert Aldi, and John Bogdanski, as the motivating factor.

Nowhere does Malchman allege that the City of Norwich Police Department or any

officer involved in any incident identified by him was motivated by his religious affiliation.

Not surprisingly, Malchman has no evidence of such conduct and any such allegation

would be mere conjecture and surmise on his part. Goenaga v. March of Dimes Birth

Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995) (at summary judgment, movant's

burden satisfied if it can point to an absence of evidence to support an essential

element of nonmoving party's claim).

Even though Malchman claims that the conduct of the Norwich police was

"intentional" and "conscious," such claims do not survive in the absence of membership

in one of the "disfavored minorities" adverted to in DeShaney. It appears that

Malchman has tried to plead his case in between the terms of that footnote and the

opposite of a selective enforcement case as advanced in Village of Willowbrook, a

"selective un-enforcement" case   However, this effort is unavailing as Village of

WIllowbrook could not have overruled DeShaney and the United States Supreme Court

has held that a crime victim does not have a constitutional right to compel the arrest or

criminal prosecution of the alleged perpetrator.

Despite the constant repetition that "probable cause existed" in his complaint,

Malchman has no legal right to insist on the criminal prosecution of Bogdanski or

anyone else. His claim is not cognizable as a matter of law. The United States Supreme

Court has held that an alleged victim of a crime does not have a right to have the

alleged perpetrator investigated or criminally prosecuted. See Linda R. S. v. Richard D.,

410 U.S. 614, 619 (1973); Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988) (neither

- 11 -

member of public at large nor victim of a crime has constitutional right to have

defendant prosecuted); <u>U.S. v. Perry</u>, 360 F.3d 519 (6th Cir. 2004); <u>Osuch v. Gregory</u>,

3:03cv1687 (WWE) (Conn. 2004) (Exhibit H); <u>Fox v. City of New York</u>, 03 Civ 2268

(FM) (S.D.N.Y. 2004) (<u>Id.</u>).

  Writing for the majority in <u>Linda R. S.</u>, Justice Marshall succinctly captured the

law in this regard:

> The Court's prior decisions consistently hold that a citizen lacks standing
> to contest the policies of the prosecuting authority when he himself is
> neither prosecuted nor threatened with prosecution. *See* <u>Younger v.</u>
> <u>Harris</u>, 401 U.S. 37, 42 (1971); <u>Bailey v. Patterson</u>, 369 U.S. 31, 33
> (1962); <u>Poe v. Ullman</u>, 367 U.S. 497, 501 (1961). Although these cases
> arose in a somewhat different context, they demonstrate that, in American
> jurisprudence at least, a private citizen lacks a judicially cognizable
> interest in the prosecution or nonprosecution of another.

<u>Linda R. S. v. Richard D.</u>, 410 U.S. 614, 619 (1973).

  Plaintiff's claim itself – selective un-enforcement – does not past muster on the

merits.  In <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 565 (2000), the plaintiff

alleged that "the Village intentionally demanded a 33-foot easement as a condition of

connecting her property to the municipal water supply where the Village required only a

15-foot easement from other similarly situated property owners."  The plaintiff further

alleged that said demand was irrational and wholly arbitrary.  <u>Id.</u>  The Court held that

these allegations were sufficient to survive a 12(b)6 motion for failure to state a

cognizable claim under the Equal Protection Clause.  <u>Id.</u> at 563, 565.

  Prior to <u>Willowbrook</u>, the rule in the Second Circuit was that a selective

enforcement claim under the Equal Protection Clause required a showing that: "(1) the

person, compared with others similarly situated, was selectively treated; and (2) that

such selective treatment was based on impermissible considerations such as race,

- 12 -

religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Giordano v. City of New York, 274 F.3d 740, 750-51 (2nd Cir. 2001); see also, Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2nd Cir. 2001).

Post-Willowbrook, Second Circuit decisions have provided mixed signals regarding whether the second element of a class of one selective enforcement claim continues after Willowbrook to require a showing of such improper motivation or can be supported merely by evidence of irrational and wholly arbitrary conduct associated with intentional disparate treatment. Soon after Willowbrook, the Second Circuit stated that proof of subjective ill-will was not an essential element, see Jackson v. Burke, 256 F.3d 93, 97 (2d Cir. 2001), but subsequently described Jackson's observation as dicta and explicitly declined to address whether Willowbrook removed the requirement of impermissible motivation. See Harlen Assoc. v. Incorporated Village of Mineola, 273 F.3d 494, 499-500 (2d Cir. 2001); see also Hayut v. State University of New York, 352 F.3d 733, 754 n. 15 (2d Cir. 2003); DeMuria v. Hawkes, 328 F.3d 704, 707 and n.2 (2003); Giordano, 274 F.3d at 751.

More recently, the Second Circuit has implied that Jackson's observation was correct, distinguishing between a "selective prosecution" equal protection claim having the two traditional elements and a "[Willowbrook]-based equal protection claim" which does not require proof of selective treatment based on impermissible considerations but only selective treatment with no rational basis for differentiation. See Cobb v. Pozzi, 363 F.3d 89, 109-10 (2d Cir. 2004).

- 13 -

There is no need to select among the alternative requirements for the second element of Malchman's claim because there is no evidence in the record supporting the first element. There is no evidence of the existence of any person in the City of Norwich – or anywhere else for that matter – is similarly situated to Malchman in terms of being "placed outside the law."

Malchman has no evidence of any similarly situation person being treated differently by the City of Norwich. <u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d. Cir. 1995) (at summary judgment, movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim). It is undisputed that from January 1, 1990 through January 10, 2003, the Norwich police responded to at least 70 incidents involving Malchman. Def. L.R. Stmt., ¶14. Nearly all were the result of his calls for service. Forty-seven incidents were significant enough to generate written incident reports and supplemental reports. Even that number of calls does not accurately represent the actual number of hours or days that the Norwich police serviced Malchman's claims. These calls for service include the above-described incidents, investigation of burglary of his business, assistance in connection with the repossession of goods, illegal dumping on his property, stolen vehicles and the like. Def. L.R. Stmt., ¶15-68. It can hardly be said base on his actual consumption of police services, Malchman was treated differently or placed out side the protection of the laws. It is undisputed that Malchman is not making a claim based on the single act of a final policymaker. His only claim is based on an unarticulated, policy, practice or custom.

- 14 -

C.     **THE UNDISPUTED FACTS DEMONSTRATE NO OFFICIAL OR UNOFFICIAL POLICY, PRACTICE OR CUSTOM EXISTS TO DENY MALCHMAN THE EQUAL PROTECTION OF THE LAWS; HIS PRODIGIOUS CONSUMPTION OF POLICE SERVICES OVER TIME IS STAGGERING; ACCORDINGLY, THE CITY OF NORWICH IS NOT LIABLE BASED ON *MONELL V. NEW YORK CITY DEPT. OF SOCIAL SERVS.*, 436 U.S. 658 (1978).**

It is axiomatic that a municipality or a municipal agency may not be liable under §

1983 for the unconstitutional actions of its employees under the doctrine of *respondeat*

*superior*, it may be held responsible for its own conduct caused by unconstitutional

policies. "It is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly said to represent official policy,

inflicts the injury that the government as an entity is responsible under § 1983." Monell

v. New York City Dept. of Soc. Servs, 436 U.S. 658, 694 (1978). Thus, to impose,

liability on a municipality, the plaintiff must prove that a municipal policy or custom

caused a deprivation. *See* Wimmer v. Suffolk County Police Dept., 176 F.3d 125, 137

(2d Cir. 1999). A "policy" is a "statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. A "custom"

is a "persistent and widespread discriminatory practice . . . so permanent and well

settled as to constitute a 'custom or usage' with the force of law." Id. at 691 (*citation*

*omitted*); *compare* Bouman v. Block, 940 F.2d 1211 (9th Cir. 1991) ("If a practice is so

permanent and well settled as to constitute a 'custom or usage' with the force of law, a

plaintiff may proceed. . .despite the absence of written authorization or express

municipal policy.") *and* Denno v. School Board of Volusia County, 218 F.3d 1267, 1278

(11th Cir. 2000) ("Given the lack of evidence with respect to the prohibition of the

Confederate flag at Pine Ridge or at other schools within the district, we agree with the

district court that Denno failed to adduce evidence creating a genuine issue of fact as to

- 15 -

a pervasive and well-settled custom of banning the Confederate flag so as to make the Board potentially liable under Monell.").

The policy or custom "need not be contained in an explicitly adopted rule or regulation," but actions by an official whose edicts or acts represent official policy may result in municipal liability under § 1983. Wimmer, 176 F.3d at 137. Thus, if the challenged action is directed by an official with "final policymaking authority," the municipality may be liable even in the absence of a broader policy. See Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.")).  Such a policy may be inferred from circumstantial proof, but the mere assertion that a municipality has such a policy is generally insufficient to support such an inference. See Dwares v. City of New York. 985 F.2d 94, 100 (2d Cir. 1993) ("A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.")

The 'custom or usage' in question will be attributed to the government body when the "duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the...governing body [or policymaker with responsibility for oversight and supervision] that the practices have become customary among its employees." Spell v. McDaniel, 824 F.2d 1380. 1387 (4th Cir. 1987); see also Britton v. Maloney, 901 F. Supp. 444, 450 (D. Mass. 1995) ("Unlike a 'policy', which comes into existence because of the top-down affirmative decision of a policymaker, a custom

- 16 -

develops from the bottom-up. Thus, the liability of the municipality for customary

constitutional violations derives not from its creation of the custom, but from its

tolerance of or acquiescence in it.").

Based on the operative allegations of Malchman's complaint, the only basis

under Monell upon which he seeks to impose liability on the City of Norwich is based on

an unarticulated so-called custom of "failing and refusing" to investigate crimes where

Malchman is the victim.  This allegation is flatly unsupported by the undisputed facts.

From 1990 until 2003, the Norwich police responded to at least 70 incidents involving

Malchman, 47 of which generated reports and subsequent follow up work. Def. L.R.

Stmt., ¶14.  The Norwich police responded to larceny calls, burglary calls,

repossessions, boundary disputes, other commercial issues, landlord/tenant disputes,

accidents, ticketed Malchman for speeding, and dealt with the incidents described in the

plaintiff's complaint.  Def. L.R. Stmt., ¶15-68.

The defendant has met its burden that Malchman is treated just like any other

citizen in the City of Norwich.  If anything, he is someone who consumes more police

services than the average citizen.  The assistance received by Malchman from the

Norwich police ranged from settling what are normally handled civilly to the recovery of

stolen property to removal of unsafe and damaged motor vehicles abandoned on his

property.  Based on the undisputed evidence, it could hardly be said that the Norwich

police have so consistently and so pervasively failed and refused to investigate crimes

directed towards Malchman.  Indeed, in the context of the incidents specifically

mentioned in Malchman's complaint, the police did everything possible to determine the

perpetrator(s) within the bounds of the law.  Concerning the incidents alleged in the

- 17 -

complaint, officers canvassed the neighborhood, conducted forensic analysis, and interviewed suspects and witnesses. *See* Def. L.R. Stmt, ¶25, 27, 32, 33, 34,39, 43, 44, 45, 48, 52, 62, 63, 66. Moreover, Malchman admits that each and every claim was investigated by the Norwich police. Id. Malchman attempted to limit that admission by claiming that the officers did investigate, they just did not investigate the incidents as much as or as thoroughly as he wanted. Id.

To the extent that Malchman seeks the criminal prosecution of Bogdanski or anyone else, his claim is not cognizable as a matter of law. Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973); Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988) (neither member of public at large nor victim of a crime has constitutional right to have defendant prosecuted); U.S. v. Perry, 360 F.3d 519 (6th Cir. 2004); Osuch v. Gregory, 3:03cv1687 (WWE) (Conn. 2004) (Exhibit H); Fox v. City of New York, 03 Civ 2268 (FM) (S.D.N.Y. 2004) (Id.).

Accordingly, summary judgment is appropriate in favor of the City of Norwich on the plaintiff's complaint dated October 1, 2001 claiming his federal constitutional rights were violated.

### C.    THE PLAINTIFF CANNOT MAINTAIN A CLAIM BASED ON THE CONNECTICUT CONSTITUTION AGAINST A MUNICIPALITY AS A MATTER OF LAW.

In addition to the federal constitutional claim that his equal protection rights were violated, Malchman alleges the same facts amount to a violation of his rights under the Connecticut Constitution.  However, Malchman does not identify any section of the Connecticut Constitution as the source of said rights.  Based on the unambiguous precedent, it is clear that common-law causes of action for state constitutional violations

- 18 -

are cognizable only against individuals and are disallowed against municipalities.  In

Kelley Property Development, Inc. v. Lebanon, 226 Conn. 314 (1993), the Connecticut

Supreme Court rejected adoption of liability in Connecticut where the plaintiff contended

that state substantive and procedural due process rights were derogated by the action

of local zoning officials based on the reasoning set forth in Bivens v. Six Unknown Fed.

Narcotics Agents, 403 U.S. 388 (1971).  While the Court in that case found no

cognizable cause of action, it employed the analysis and criteria set forth in the Bivens

case in arriving at that conclusion. In using this approach, the Connecticut Supreme

Court implicitly suggested that, in an appropriate matter which satisfied the Bivens

criteria, such a cause of action might be viable.

Five years later, the Connecticut Supreme Court found a case where the facts

and constitutional violations claimed fulfilled the Bivens requirements, and the Court

created a common-law cause of action. Binette v. Sabo, 244 Conn. 23 (1998).

However, the Connecticut Supreme Court has been constant in stating that in deciding

whether a Bivens action ought to be permitted for a given state constitutional violation,

the Bivens case and its federal progeny would guide Connecticut courts. Kelley

Property Development, Inc. v. Lebanon, 226 Conn. 314, 338 (1993); ATC Partnership v.

Windham, 251 Conn. 597, 613 (1999).

In 1994, the United States Supreme Court held that Bivens actions apply only to

individuals and not governmental agencies. FDIC v. Meyer, 510 U.S. 471, 486 (1994).

Recently, that Court has reiterated and expanded the restriction holding that Bivens

actions are available only against individuals and not private corporate entities engaged

in governmental business. Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001).

- 19 -

It is undisputed that the City of Norwich, a municipal corporation, is the sole defendant. Def. L.R. Stmt., ¶9.  Applying the limitations pertaining to <u>Bivens</u> actions as announced by the United States Supreme Court, no <u>Bivens</u> action – based on the federal or state constitution - can be maintained directly against the City of Norwich – or any other municipality for that matter - for any violations of the state constitution. <u>Kelley Property Development, Inc. v. Lebanon</u>, 226 Conn. 314, 338 (1993); <u>ATC Partnership v. Windham</u>, 251 Conn. 597, 613 (1999).

Accordingly, summary judgment is appropriate in favor of the City of Norwich on the plaintiff's claims based on the Connecticut Constitution.

### D.    ALTERNATIVELY, THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE STATE CONSTITUTIONAL CLAIM.

In addition and the alternative, this Court, having decided that the plaintiff has failed to state valid federal claims and/or granted summary judgment on all federal claims, should decline to exercise jurisdiction over the pendant state law claim based on the state constitution. *See* <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in the jurisdictional sense, the state claims should be dismissed as well."); <u>Lennon v. Miller</u>, 66 F.3d 416, 426 (2d Cir. 1995) (same); <u>Spear v. Town of West Hartford</u>, 771 F. Supp. 521, 530 (D. Conn. 1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of. . . ."), *aff'd.* 954 F.2d 63 (2d Cir.), *cert. denied*, 506 U.S. 819 (1992).  Accordingly and in the alternative, the Court should decline to extend its jurisdiction over the claims based on the Connecticut Constitution.

- 20 -

**III.    CONCLUSION.**

For the reasons set forth above, the defendant, City of Norwich, prays that the

court will grant its motion for summary judgment dated September 21, 2004.

RESPECTFULLY SUBMITTED,

THE DEFENDANT,
CITY OF NORWICH

/s/ John J. Radshaw, III
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)

## C E R T I F I C A T I O N

This is to certify that a copy of the foregoing has been sent to all counsel of
record this 21st day of September 2004.

John R. Williams, Esquire          Michael E. Driscoll, Esquire
Williams & Pattis, LLC             Brown, Jacobson, P.C.
51 Elm Street, Suite 409           22 Courthouse Square
New Haven, CT  06510               P.O. Box 391
                                   Norwich, CT  06360-0391

John M. Massameno, Esquire
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, CT  06067

/s/ John J. Radshaw, III
John J. Radshaw, III

- 21 -