**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DANIEL G. MALCHMAN        :      NO.: 3:01 CV 1877 (MRK)

                                     :

v.                                   :

                                       :

CITY OF NORWICH           :      SEPTEMBER 21, 2004

## LOCAL RULE 56(A)1 STATEMENT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56 and D.Conn.L.Civ.R. 56, the defendant, CITY OF

NORWICH, submits the following Local Rule 56(a)1 Statement of material facts not in

dispute with attached affidavits and admissible evidence as exhibits in support of its

Motion for Summary Judgment dated September 20, 2004.

1.      The plaintiff, Daniel Malchman, is a resident of the City of Norwich, **Complaint, ¶3,** and who lives at 32 Tanglewood Drive. **Ex. A, Depo. Malchman, p. 20.**

2.      On September 10, 1998, an arrest warrant was issued for Malchman, alleging he committed a number of environmental crimes for allegedly dumping sand grit that was contaminated with lead or lead paint. **Ex. A, Depo. Malchman, p. 10-11; E, Arrest Warrant.**

3.      The warrant alleged that Malchman, with others, had decided to bury lead-contaminated sand grit on the property of Ponemah Mills, rather than pay for disposal of this hazardous waste. **Ex. E, Arrest Warrant, ¶¶2, 6, 9.**

4.      On September 14, 1998, Malchman was arrested by the State's Attorney's office and was photographed, fingerprinted and processed at the



Department. **Ex. A. Depo. Malchman, pp. 100-1.**

5.   By substitute information dated January 24, 2002, Malchman was charged

with a violation of Conn. Gen. Stat. §22a-131a(b), Storage of Hazardous

Waste without a Permit; a violation of Conn. Gen. Stat. §22a-131a(b),

Disposal of Hazardous Waste without a Permit; a violation of Conn. Gen.

Stat. §53a-48(a), Conspiracy to Commit a violation of Conn. Gen. Stat.

§22a-131a(b), Storage of Hazardous Waste without a Permit; a violation

of Conn. Gen. Stat. §22a-131a(b), Disposal of Hazardous Waste without a

Permit; and three counts setting forth violations of a violation of Conn.

Gen. Stat. §22a-131a(c), Placing Another In Imminent Danger of Death or

Serious Bodily Injury as to Mary Swan, John A. Bogdanski and Carl

Hoover. **Ex. F, Substitute Information, pp. 1-3.**

6.   John A. Bogdanski is a resident of the City of Norwich, **Complaint, ¶3,**

and who lives at 27 Tanglewood Drive.  Bogdanski was a tenant at

Ponemah Mills, a property owned by Malchman. **Ex. E, Arrest Warrant,**

**¶10.**

7.   Bogdanski is listed as a witness with information adverse to Malchman in

the context of Malchman's arrest for environmental crimes. Bogdanski was

told that the sandblasting did not involve lead paint. Bogdanski did not see

warning notices about lead. However, Bogdanski saw the workers

involved in the sandblasting wearing protective gear. Bogdanski also saw

the sand grit which resulted from the blasting collect in a void below the

building and later he saw a concrete floor being poured over that area.  As

- 2 -

a result of complaints from his employees at that time, several employees had their blood tested for lead exposure and of all that were tested, each tested in excess of the state minimum reporting level of 10 ug/dl, one of which had a level of 23.5 ug/dl. **Ex. E, Arrest Warrant, ¶10.**

8.  On January 15, 2002, Judge Handy, who was overseeing the criminal action in state court, ordered that Malchman should have no contact with any person associated with the criminal case, including John A. Bogdanski. **Ex. G, Trans. 1/15/02, pp. 2, 5, 6.**

9.  The City of Norwich is a municipal corporation and the sole defendant in the present case. **Complaint, ¶4; Ex. A, Depo. Malchman, p. 17.**

10. Louis J. Fusaro, Sr. is the Chief of Police Department of the City of Norwich and is responsible for setting, maintaining, and enforcing the rules, regulations, procedures, polices, practices and customs of the City of Norwich Police Department. **Ex. B, Aff. of Fusaro, ¶6.**

11. Warren C. Mocek is the Deputy Chief of Police of the City of Norwich and is responsible for the day-to-day operations of the Department and all of its separate divisions, Patrol, Detective, Records, and Training, including the conduct and oversight of internal affairs matters, reporting to the Chief of Police. **Ex. C, Aff. of Mocek, ¶6.**

12. Sergeant William Molis is a police officer employed by the City of Norwich and is currently assigned as the officer in charge of the Records Division of the City of Norwich Police Department, reporting to the Deputy Chief of

- 3 -

the Department. **Ex. D, Aff. of Molis, ¶5.** Sergeant Molis is responsible for the care, custody and maintenance of the official records of the City of Norwich Police Department. **Ex. D, Aff. of Molis, ¶6.**

13. Robert Aldi is a former police officer who retired in 2001 and is not a defendant in this case. **Ex. C, Aff. of Mocek, ¶67; Ex. A, Depo. Malchman, p. 17.**

14. From January 1, 1990 until January 10, 2003, officers of the Department responded to more than 70 incidents in which Malchman was involved; at least 47 of which resulted in written incident reports and, in some cases, supplemental reports. **Ex. C, Aff. of Mocek, ¶¶13-15; Ex. D, Aff. of Molis, ¶19.**

15. On May 19, 1990, an officer was dispatched to Mr. Malchman's residence to take a complaint of a roaming canine. The office did not observe the canine but attempted to contact the animal's owner. Following further investigation, the animal's owner was issued an infraction ticket for allowing a dog to roam. **Ex. C, Aff. of Mocek, ¶16.**

16. On August 9, 1991, an officer was dispatched to Ponemah Mills building No. 2 upon Mr. Malchman's report of 30 broken windows in the boiler room near the rear of the building. Malchman reported he believed the windows were broken by youths who lived in the area between August 1 and August 8, 1991. Not having any identifiable suspects, no arrests were made. The investigating officer caused a note to be placed at "Line Up" for on-duty patrol officers to make periodic checks of the Ponemah Mills to try

- 4 -

and prevent future vandalism. **Ex. C, Aff. of Mocek, ¶17.**

17.    On September 27, 1992, an officer was dispatch to investigate a complaint of improper dumping from Malchman.  Malchman complained someone dumped old trees, books, magazines and other trash on his property at 509 Norwich Avenue.  Malchman examined the trash and found a name of a person on many of the magazines and other papers.  While that person was deceased, an investigation revealed that in cleaning up the decedent's house, a relative paid a person known as "Mr. Gladue" to remove and dispose of the trash.  Gladue did not take the trash to the landfill as promised, instead dumping it on Malchman's property. Feeling very upset, the relative paid Malchman to have the trash removed and Malchman insisted no arrest should be made. The investigating officer caused a note to be placed at "Line Up" for on-duty patrol officers to make periodic checks of the area near 509 Norwich Avenue because Malchman was afraid Gladue would dump again. **Ex. C, Aff. of Mocek, ¶18.**

18.    On May 11, 1994, a person reported that pilings were being removed from the Thames River without permission. The property from which the pilings were being removed was co-owned by Malchman.  The party removing the pilings refused to stop removing the pilings unless told to do so by the police.  An officer interviewed the party removing the pilings and brought Malchman and that party to an agreement where the removed pilings would be replaced and no further removals would occur. **Ex. C, Aff. of Mocek, ¶19.**

- 5 -

19. On November 19, 1995, officers responded to a burglary-in-progress of a warehouse owned by Malchman. The officers apprehended the accused, a juvenile, and promptly arrested him. The juvenile was released to his foster mother and attorney on a promise to appear in court. **Ex. C, Aff. of Mocek, ¶20.**

20. On January 30, 1996, an officer was dispatched to investigate Malchman's complaint that 4 packing crates were stolen from outside a building he owns at 599 Norwich Avenue. The officer checked the area but discovered no evidence and was unable to conduct a neighborhood canvass due to the area has no occupants or residents. The officer placed a note in "Line Up" to monitor the area. **Ex. C, Aff. of Mocek, ¶21.**

21. On March 14, 1996, an officer responded to a complaint from Malchman concerning a dispute Malchman had with a former tenant at Ponemah Mills building no. 3. Malchman complained that the former tenant had failed to remove all of its property following an eviction and had removed electrical panels from the premises, rendering the building without electricity. Malchman claimed that the panels belonged to him as they were affixed to the building despite the former tenant having paid for them. The investigating officer spoke with a City of Norwich electrical inspector, a member of the Planning and Zoning Department, the former tenant, and after consultation, the State's Attorney declined prosecution. The dispute escalated to a series of incidents through April 3, 1996 where officers interceding on several occasions over the electrical panels. The former

- 6 -

tenant established that he paid for the panel and the State's Attorney declined prosecution. **Ex. C, Aff. of Mocek, ¶22.**

22.   On March 28, 1996, Malchman complained that the former tenant described in the preceding paragraph threatened Malchman with his fist and stated "I'm going to get you." Malchman felt that the former tenant intended to harm him. The responding officer interviewed the former tenant who conceded making an all-to-common rude gesture with his hand and middle finger but denied threatening Malchman. Malchman came to headquarters and made a statement. The officer applied for an arrest warrant for the former tenant. **Ex. C, Aff. of Mocek, ¶23.**

23.   Later on March 28, 1996, Malchman called the police complaining that the same former tenant had vandalized his motor vehicle. Individuals at Malchman's business saw the former tenant do something to the car. Officers investigated the incident and arrested the former tenant for criminal mischief. **Ex. C, Aff. of Mocek, ¶24.**

24.   On July 18, 1996, officers were dispatched to Malchman's business regarding a boundary dispute between neighboring businesses. Malchman's business was the entity which was responsible for parking the vehicles and obstructing access to the neighboring business.  It was discovered that Malchman's business had a lease for those spots. **Ex. C, Aff. of Mocek, ¶25.**

25.   On November 1, 1996, Malchman complained that someone had spray-painted a swastika on his motor vehicle at some point during the previous

- 7 -

night. Photographs were taken and Malchman was interviewed and stated he thought a former neighbor, Thomas Kirker, might have committed the crime. The matter was referred to the day shift for a neighborhood canvass which did not yield any information. **Complaint, ¶6; Ex. A, Depo. Malchman, pp. 20-5, 29; Ex. C, Aff. of Mocek, ¶26; Ex. D, Aff. of Molis, ¶9, Attachment #1.** Malchman concedes that the City of Norwich Police Department investigated his complaint on this day but that they did not do "enough." **Ex. A, Depo. Malchman, pp. 29, 31-2.**

26.    On August 15, 1997, Elaine Malchman struck a medium sized white canine that wandered on to New London Turnpike. An accident report was generated by a member of the Department. **Ex. C, Aff. of Mocek, ¶27.**

27.    On the evening of October 31, 1997, Malchman contacted the police to report someone had placed dog feces in his mailbox. **Complaint, ¶7; Ex. A, Depo. Malchman, p. 32-3.** The Norwich Police investigated the incident but did not, as Malchman demanded, scientifically test the dog feces recovered from his mailbox with dog feces that could have been recovered from the property of John A. Bogdanski, the person who Malchman suspected committed the act. **Ex. A, Depo. Malchman, pp. 32-5.** Again, Malchman concedes that he claims the investigation was substandard, and not that the City of Norwich Police conducted no investigation. **Id., p. 34.**

28.    On November 19, 1997, Elaine Malchman, the plaintiff's spouse,

- 8 -

complained of a large white dog roaming in her neighborhood, had been loose in her yard and had harassed her. Officers investigated and contacted the owner, John A. Bogdanski, who was given a warning notice for roaming and 21 days to license the animal. **Ex. C, Aff. of Mocek, ¶28.**

29.    On or about January 12, 1998, Malchman called the police complaining of a burglary at his business. An officer responded and investigated the crime, took an inventory of the stolen items, interviewed a suspect and confirmed that suspect's alibi. **Ex. C, Aff. of Mocek, ¶29.**

30.    On January 31, 1998, Malchman complained that an individual was illegally dumping refuse on his property. The police investigated after Malchman detained the accused and issued the accused an infraction after requiring the accused to clean up the mess. **Ex. C, Aff. of Mocek, ¶30.**

31.    On September 10, 1998, the Norwich Police Department assisted the State's Attorney in the service of three arrest warrants, one of which was for Malchman. Malchman was photographed, fingerprinted and taken to Norwich Superior Court for bail. He met the bail and was released. **Ex. C, Aff. of Mocek, ¶31.**

32.    On October 26, 1998, an officer was dispatched to Malchman's residence for a report of harassment. The investigation revealed that Malchman had received a harassing letter in his mail. The letter was tagged as evidence for possible fingerprinting. Malchman believed his neighbor John A. Bogdanski was responsible. **Ex. A, Depo. Malchman, pp. 35, 40; Ex. C,**

**Aff. of Mocek, ¶32; Ex. D, Aff. of Molis, ¶10, Attachment #2.**

33.   On November 3, 1998, an officer was dispatched to Malchman's
residence for a report of harassment. The investigation revealed that
Malchman had received another harassing letter in his mail. The letter was
tagged as evidence for possible fingerprinting. After several unsuccessful
attempts, the officer spoke with Bogdanski who denied sending the letters
but agreed to provide a handwriting sample.  The handwriting sample was
analyzed by the Connecticut State Police Forensic Science Laboratory
which did not reveal any identifiable fingerprints and concluded that
Bogdanski was not the author of the letters. **Ex. A, Depo. Malchman, pp.
35, 40; Ex. C, Aff. of Mocek, ¶33; Ex. D, Aff. of Molis, ¶10, Attachment
#2.**

34.   On April 12, 1999, an officer was dispatched to Malchman's residence to
respond to another item of harassing mail. The letter was tagged as
evidence for possible fingerprinting.  Malchman believed his neighbor
John A. Bogdanski was responsible.  This letter was submitted to the
Connecticut State Police Forensic Science Laboratory. No analysis could
be undertaken because Bogdanski refused to provide an additional
handwriting sample. No latent identifiable fingerprints were discovered on
the letter. **Ex. A, Depo. Malchman, pp. 40-45; Ex. C, Aff. of Mocek, ¶34;
Ex. D, Aff. of Molis, ¶11, Attachment #3.**

35.   On April 23, 1999, a resident of Plain Hill Road reported damage to her
mailbox by a baseball bat-type implement.  Further investigation revealed

- 10 -

a dozen other mailboxes similarly damaged.  Elaine Malchman, the

plaintiff's spouse, made a similar complaint. Several homeowners were

interviewed and a note was placed in the "Line Up" for increased patrols in

this area. **Ex. C, Aff. of Mocek, ¶35.**

36.    On May 20, 1999, Malchman complained that his neighbor's dog was

roaming while he was out of town. Malchman's spouse, Elaine, reported

that the dog, owned by John Bogdanski, came off Bogdanski's property

and approached her while she was walking her miniature schnauzer.

Fearing a fight between the dogs, she picked it up and ran off. The officer

investigated and learned Bogdanski's dog had jumped the fence and was

issued a warning. **Ex. C, Aff. of Mocek, ¶36.**

37.    On May 26, 1999, Malchman complained that someone was illegally

dumping on his property at 555 Norwich Avenue. The investigating officer

photographed the scene and examined the refuse to locate possible

identifying documents. Several were located and taken as evidence. **Ex.**

**C, Aff. of Mocek, ¶37.**

38.    On November 3, 1999, Malchman reported that electronics in boxes were

stolen from a truck at his business. Despite the fact that Malchman

refused to give a written statement, officers investigated a number of

suspects over the following thirty days.  The officers eventually applied for

arrest warrants for two suspects.  The warrants were refused by the

State's Attorney because they did not have enough specific information

which was in the possession of Malchman but who was unwilling to