divulge. On February 24, 2000, Malchman asked the officer to drop the entire matter and stated he was willing to forget the entire incident. **Ex. C, Aff. of Mocek, ¶38**

39. Sometime in 1999 or 2000, Malchman claimed that John Bogdanski followed him on Plainville Road, beginning at 25 mph and accelerating to 60 mph. Malchman claimed he went directly to the Norwich Police to complain. He does not, however, have any personal knowledge of what the police may have done about this incident. **Ex. A, Depo. Malchman, p. 47-8.**

40. On January 2, 2000, Malchman was given an infraction ticket for driving 42 mph in a posted 25 mph zone. He was clocked using radar. **Ex. C, Aff. of Mocek, ¶39.**

41. On March 24, 2000, Malchman called police wanting to document an incident where an individual allegedly threatened him. That individual was a suspect in a theft from Malchman and a business partner. State's Attorney's office declined to prosecute. **Ex. C, Aff. of Mocek, ¶40.**

42. On March 25, 2000, Malchman reported that a vehicle stored in the parking lot of his business but owned by another person was broken into and the radio was taken. The victim was notified. The officer was unable to conduct a neighborhood canvass due to the area has no occupants or residents. **Ex. C, Aff. of Mocek, ¶41.**

43. On April 28, 2000, officers responded to a complaint by Malchman that his

neighbor, John A. Bogdanski, caused a disturbance by making a "face" at Malchman's children who were waiting for the school bus. Both Malchman and his spouse, Elaine, reported that Bogdanski drove by the children slowly and smiled at them. Later, Malchman stated that Bogdanski made an "awful" face at his children. Malchman was concerned for the safety of his children and told the officers that if nothing was done, he would take things into his own hands. The investigating officer concluded there was no probable cause for an arrest whether Bogdanski was smiling or making an "awful" face. Bogdanski's explanation for his behavior was that he was driving slowing because he knows young children are in the area. **Ex. A, Depo. Malchman, pp. 63-73; Ex. C, Aff. of Mocek, ¶42; Ex. D, Aff. of Molis, ¶12, Attachment #4.**

44. On July 26, 2000, an officer was dispatched to a disturbance at the Pagoda Restaurant where Malchman complained that Bogdanski had violated a no-contact order. At the restaurant, Malchman was unable to produce a copy of the order. The officers interviewed Bogdanski and other witnesses. Bogdanski denied instigating any confrontation with Malchman and insisted that Malchman started the incident. Malchman's meal companion's statement confirms that Bogdanski did nothing until Malchman stated that Bogdanski was "a sick man." The investigating officer received a copy of a letter that stated a no-contact order existed but did not receive an actual copy of the order. Absent such order, no action was taken. **Ex. A, Depo. Malchman, p. 51, 54-6; Ex. C, Aff. of Mocek,**

- 13 -

Case 3:01-cv-01877-MRK   Document 51-2   Filed 09/23/2004   Page 3 of 15

**¶43; Ex. D, Aff. of Molis, ¶13, Attachment #5.**

45. On July 28, 2000, Malchman called the police to complain that he received a harassing phone call. Malchman was certain that the caller was Bogdanski. The investigating officer contacted the phone company security office regarding the call. The company indicated such information could not be retrieved. Accordingly, the officer concluded no probable cause existed to charge Bogdanski. **Ex. A, Depo. Malchman, pp. 61, 64-5; Ex. C, Aff. of Mocek, ¶44; Ex. D, Aff. of Molis, ¶14, Attachment #6.**

46. On July 31, 2000, Malchman contacted police to report a larceny at his business. Malchman reported that someone must have tampered with a company vehicle, removing parts from the motor vehicle and taking a fishing pole. **Ex. C, Aff. of Mocek, ¶45.**

47. On August 18, 2000, Malchman reported to police that he had lost his wallet. He believed he may have left it or dropped at a local donut shop. **Ex. C, Aff. of Mocek, ¶46.**

48. On August 25, 2000, Elaine, Malchman's spouse, called police to report that someone had left an orange-colored rubber penis in the driveway of her home. Malchman was not at home when the complaint was made. Malchman told the investigating officer that it was put there by John A. Bogdanski based on the on-going feud they were having. The rubber penis was taken as evidence. A canvass did not uncover any witnesses. The rubber penis was processed for latent fingerprints but no potentially identifiable latent fingerprints were developed. **Ex. A, Depo. Malchman,**

pp. 66-7; **Ex. C, Aff. of Mocek, ¶47; Ex. D, Aff. of Molis, ¶15, Attachment #7.** Again, Malchman claims only the City of Norwich Police Department conducted a substandard investigation, not no investigation. **Ex. A, Depo. Malchman, p. 68.**

49. On October 17, 2000, Malchman contacted police to complain that six small motorcycles were stolen from his business during the evening and overnight hours. The investigating officer learned the perpetrators cut the fence where they removed the motorcycles and where they forced entry into the building. Later, the officer conducted a security check of the business and located fresh tire marks consistent with the removal of the motorcycles. Further investigation with Malchman's security officer and recent rain allowed the officer to determine the time of the theft. The officer attempted to obtain fingerprints from items handled inside the storage area but not taken. No prints were obtained. The following day, Malchman telephoned police to report all of the motorcycles and accessories were recovered approximately 50 feet beyond the hole in the fence hidden in between abandoned vehicles at the bottom of an embankment. **Ex. C, Aff. of Mocek, ¶48.**

50. On December 8, 2000, an individual who owed Malchman money claimed that Malchman had stolen his vehicle. The matter was investigated and it was determined that the individual had given the vehicle to Malchman as collateral based on some sort of verbal lien agreement. The officer determined the vehicle was not stolen and advised the parties to treat it as

- 15 -

a civil matter. **Ex. C, Aff. of Mocek, ¶49.**

51. On February 3, 2001, police investigated a break-in at 599 Norwich Avenue, a building owned by Malchman. No suspects were located and nothing appeared to have been stolen. Malchman refused the officer's plan to photograph the scene and fingerprint the broken lock. Malchman refused a criminal complaint and merely wanted increased patrols. **Ex. C, Aff. of Mocek, ¶50.**

52. On May 11, 2001, Malchman telephoned Deputy Chief Mocek and complained that Captain Robert Aldi was involved in a wide-ranging criminal conspiracy, whose ultimate goal was to maliciously prosecute Malchman for crimes that he states he did not commit. Deputy Chief Mocek interviewed Malchman who reluctantly proffered three witnesses to substantiate his claims. The first witness had no knowledge whatsoever. The second witness had only hearsay knowledge. The third witness, not only did not possess the knowledge and information claimed by Malchman, but disputed the numerous statements and actions Malchman attributed to him. Based on the absence of evidence, the complaint was dismissed and the matter closed. **Ex. C, Aff. of Mocek, ¶ 51, Attachment #1.**

53. On June 29, 2001, Malchman sold a used car to an individual and accepted some cash and an older car as a trade-in. The individual left with the newly purchased car without filling out the paperwork to transfer the older car to Malchman. The investigating officer issued an "attempt to

locate" notice on the individual and the newly purchased car. The individual returned and completed the paperwork before the police located him. **Ex. C, Aff. of Mocek, ¶52.**

54. On July 26, 2001, Malchman reported that a vehicle was stolen from his business. He had sold it to an individual under an installment plan but sufficient payments were missed and Malchman arranged to have it repossessed. Malchman's repossession agent, after obtaining the vehicle, left the vehicle outside Malchman's business. The owner's husband, after learning of the repossession, went out and retook the vehicle, parking it inside his driveway blocked by a van to prevent a second repossession. Officers investigated, guarded the vehicle, arranged to have the van moved by the city wrecker and returned the vehicle to Malchman. The officers applied for an arrest warrant which was approved, but vacated by the State's Attorney. **Ex. C, Aff. of Mocek, ¶53.**

55. On October 10, 2001, Malchman called the police to report a harassing telephone call from an individual who allegedly said "I went to the State's Attorney's office, I will be in court and I'm going to make sure you get what you deserve." Officers investigated and applied for a warrant for the arrest of the caller. The warrant was refused by the State's Attorney. **Ex. C, Aff. of Mocek, ¶54.**

56. On October 13, 2001, Malchman called police to report a theft from his business. Malchman sold a used car to an individual who gave him a cash deposit. After placing the money in his desk drawer, Malchman left

- 17 -

the room for a brief time. After the person left with the car, Malchman checked the drawer and discovered the money was gone. Malchman's security camera recorder the incident on videotape. The person taking the money matched the person who purchased the car. The officer applied for an arrest warrant and later apprehended the individual. **Ex. C, Aff. of Mocek, ¶55.**

57. On October 29, 2001, Malchman called the police to tow an abandoned motor vehicle with heavy front end damage from his property on Thermos Avenue. An investigation over the next several months revealed it belonged to a Norwich resident who was told to remove the vehicle. The vehicle did not meet the statutory requirements for the police to order a tow. **Ex. C, Aff. of Mocek, ¶56.**

58. Later on October 29, 2001, Malchman called the police to tow another abandoned motor vehicle from his property on Thermos Avenue. An investigation revealed that it did not appear in any motor vehicle registration database. The vehicle met the statutory requirements for the police to order a tow and it was towed to a nearby junkyard. **Ex. C, Aff. of Mocek, ¶57.**

59. Later on October 29, 2001, Malchman called the police to tow another abandoned motor vehicle from his property on Thermos Avenue. An investigation revealed the last owner of record was located in Rhode Island. After further investigation and after following the statutory procedure, the vehicle met the statutory requirements for the police to

- 18 -

order a tow and it was towed to a nearby junkyard. **Ex. C, Aff. of Mocek, ¶58.**

60. Later on October 29, 2001, Malchman called the police to tow another abandoned motor vehicle with heavy front end damage from his property on Thermos Avenue. An investigation over the next several months revealed it belonged to a Norwich resident who was told to remove the vehicle. The vehicle did not meet the statutory requirements for the police to order a tow. **Ex. C, Aff. of Mocek, ¶59.**

61. On November 1, 2001, Malchman struck the bumper of a parked car while he was trying to park next to that car. Norwich police investigated, prepared a report and determined no charges apply. **Ex. C, Aff. of Mocek, ¶60.**

62. On July 9, 2002, Malchman called police after he felt threatened by Robert Aldi, a retired Norwich police officer. Aldi allegedly stated "look who you see when you are not carrying a gun." Several people witnessed the incident, including a detective with the Connecticut State Police who was in plain clothes. Based on the investigation, the officer concluded no crime occurred. **Ex. C, Aff. of Mocek, ¶61; Ex. D, Aff. of Molis, ¶16, Attachment #8.**

63. On September 28, 2002, Malchman called the police to complain that John A. Bogdanski violated a no-contact order issued by a Connecticut Superior Court Judge in connection with a criminal case against Malchman in which Bogdanski is a witness. Malchman complained that

- 19 -

Bogdanski walked past him on the street, stopped approximately three feet from Malchman, stared, and walked away. No words were exchanged. A witness corroborated Malchman's account. Bogdanski admitted walking on the street and stated he did not speak to Malchman or step on Malchman's property. The investigating officer received documentation from Malchman substantiating the no-contact order but concluded that no violation occurred as the order prohibits physical or verbal contact. The State's Attorney reviewed the investigating officer's report and agreed no violation occurred. **Ex. C, Aff. of Mocek, ¶62; Ex. D, Aff. of Molis, ¶17, Attachment #9.**

64. On November 18, 2002, Malchman called the Norwich police to complain that someone had illegally dumped old construction materials and other refuse on his property at 15 Broad Street. The investigating officer found identifying documents which allowed the officer to trace the debris back to the person who later admitted illegally dumping the materials and debris. That person took full responsibility and, under police supervision, removed the materials from Malchman's property. **Ex. C, Aff. of Mocek, ¶63.**

65. On January 14, 2003, Malchman called the police and demanded that the illegal dumping incident which occurred on November 18, 2002 be re-opened and the suspect arrested immediately. An arrest warrant was completed and was submitted to the State's Attorney who refused to forward the warrant to a judge for review because the area was cleaned up. **Ex. C, Aff. of Mocek, ¶64.**

66. On September 3, 2003, Malchman complained that he had received harassing mail. An officer was dispatched who recovered a blank piece of white paper which wrapped a recent newspaper article about Malchman's impending criminal trial. Malchman believed John A. Bogdanski was the sender but had no proof. The items were taken as evidence and submitted to the Connecticut State Police Forensic Laboratory for latent print analysis and handwriting comparison. No identifiable prints were located and the author of the address on the envelope could not be positively identified. **Ex. C, Aff. of Mocek, ¶65; Ex. D, Aff. of Molis, ¶18, Attachment #10.**

67. On September 15, 2003, Malchman contacted the police to report that he was the victim of harassing statements by Peter Oddo. Malchman complained that Oddo told Malchman's business partner, Brian Burchman, that Malchman and other person burned down the Jewett City Mill, a property owned by Malchman, and Oddo would tell the police unless another individual withdrew a DMV complaint against Oddo. During the investigation, Oddo denied making the statements and Malchman was informed that Oddo's statements were not criminal violations of the law but might be the grounds for a civil action. **Ex. C, Aff. of Mocek, ¶66.**

68. On January 10, 2004, Malchman contacted the police regarding the discovery of 7.62 mm ammunition and approximately 6.3 grams of marihuana, seeds and leafy material that was discovered in a storage unit following the default by the tenant. An officer responded, took a report

- 21 -

and took the ammunition and contraband as evidence. **Ex. C, Aff. of Mocek, ¶67.**

69. Chief Fusaro is responsible for policymaking on matters pertaining to the City of Norwich Police Department. **Ex. B, Aff. of Fusaro, ¶¶6-7.**

70. There is no official or unofficial policy, practice or custom to fail or refuse to investigate complaints made by Daniel Malchman or any member of his family. **Ex. B, Aff. of Fusaro, ¶8.**

71. There is no official or unofficial policy, practice or custom to fail or refuse to investigate complaints when an incident involves John A. Bogdanski. **Ex. B, Aff. of Fusaro, ¶9.**

72. There is no official or unofficial policy, practice or custom to refuse to investigate complaints when any party involved is an acquaintance of former police officer Robert Aldi. **Ex. B, Aff. of Fusaro, ¶10.**

73. There is no official or unofficial policy, practice or custom to refuse to investigate complaints when any party involved is a member of the Jewish faith. **Ex. B, Aff. of Fusaro, ¶11.**

74. There is no unofficial policy, practice or custom to aid any individual in harassing any other individual in the City of Norwich or anywhere else. **Ex. B, Aff. of Fusaro, ¶12.**

75. It is the official policy of the City of Norwich Police Department to respond to and investigate complaints at and within the judgment and discretion of the investigating officers and within the judgment and discretion afforded

to them by law. **Ex. B, Aff. of Fusaro, ¶13.**

76. It is the official policy of the City of Norwich Police Department to respond to complaints received in a responsible and professional manner, in the order of their priority to the health, safety and welfare of the citizens involved in those complaints and the community, and subject to the availability of police manpower and resources then and there available. **Ex. B, Aff. of Fusaro, ¶14.**

77. Malchman has no law enforcement training or experience. **Ex. A, Depo. Malchman, p. 22.**

78. With regard to the allegations of the complaint, Malchman admits it would be incorrect to say that the City of Norwich Police Department conducted no investigation. **Ex. A, Depo. Malchman, p. 80.** Malchman believes that the City of Norwich Police Department did not do what he thought they should do. **Ex. A, Depo. Malchman, p. 90.**

THE DEFENDANT
CITY OF NORWICH

/s/ John J. Radshaw, III
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06114
(860) 249-1361
(860) 249-7665 (fax)

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent to all counsel of record this 21st day of September 2004.

John R. Williams, Esquire
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

Michael E. Driscoll, Esquire
Brown, Jacobson, P.C.
22 Courthouse Square
P.O. Box 391
Norwich, CT  06360-0391

John M. Massameno, Esquire
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, CT  06067

/s/ John J. Radshaw, III
John J. Radshaw, III

- 24 -