Norwich Police Department

## Internal Investigation

DATE: August 1, 2001
TO: Chief Louis J. Fusaro, Sr.
FROM: D/C warren L. Mocek

RE: **Unsubstantiated allegations of criminal activity**

**Synopsis**

On May 11, 2001, I received a telephone call from Daniel Malchman, complaining about Captain Robert Aldi. Mr. Malchman complained that Captain Aldi was involved in a widespread criminal conspiracy, whose ultimate goal was to maliciously prosecute Mr. Malchman for crimes that he states he did not commit.

The Department of Environmental Protection and the Chief State's Attorney's Office had arrested Mr. Malchman (September 11, 1998) for his alleged part in the illegal dumping of hazardous waste (lead-paint contaminated sandblasting residue) at Ponemah Mills. Mr. Malchman now claims, among numerous other things, that Governor John Rowland initiated his arrest. He further claims that the arrest was (falsely) engineered by members of the Chief State's Attorney's Office, and this "conspiracy" was supported by members of the New London County States Attorney's Office, the Connecticut State Police, and Captain (then

## Attachment 1

Lieutenant) Aldi. He claims that he is innocent of all charges (saying that since he owns no construction equipment, the State cannot call him a contractor). Mr. Malchman states that this widespread conspiracy was initiated because the Governor needed to show that he was strong on environmental crime during the last election (held November 1998). Mr. Malchman also stated that "they" (Captain Aldi included) have conspired against him because of lingering animosity over his alleged part in the bankrupting and demise of the former Danielson Savings Bank. He has also stated that another reason for this conspiracy of because "I'm a Jew and I have money." Mr. Malchman stated that he intends to sue all involved, and wants this department to arrest Captain Aldi for his part in the "conspiracy".

On dozens of occasions subsequent to this initial complaint, Mr. Malchman telephoned or made personal contact with myself, Lt. Ward, or other members of this department. On a number of occasions Mr. Malchman called back several times even before his initial call could be returned. Each time he would reiterate, in some form or other, the above statements. The allegations and their range seemed to increase after Mr. Malchman applied for, and was denied accelerated rehabilitation for his pending charges.

Mr. Malchman has since requested and obtained computer and report records of Norwich police response to complaints he has made in years past, and has examined the police reports generated. Lack of a police report or any omission

or oversight on an existing report, no matter how slight or nebulous is, states Mr. Malchman, further evidence of Captain Aldi's involvement in the alleged "anti-Semitic conspiracy" to "falsely prosecute him" (note that some of these reports long pre-date his arrest). Mr. Malchman's initial reasoning for believing that Captain Aldi is involved in this alleged conspiracy is that he (Captain Aldi) and John Bogdanski (one of the State's main witnesses in the illegal dumping case) "lived near each other while growing up". Further evidence, according to Mr. Malchman, is that they "rode the school bus together", and [Captain] "Aldi swam in Bogdanski's pool" as a youth.

In checking with Investigator Schroeder of the Chief State's Attorney's Office, I learned that, with respect to Mr. Malchman's allegation that the arrest warrant affidavit was falsified (Mr. Malchman alluding to Captain Aldi being involved in falsification of the affidavit), Captain Aldi had absolutely no input into the affidavit. Further, Mr. Malchman's attorney never filed a Franks Motion, and admitted to probable cause being present in the affidavit.

Further, Captain (then Lieutenant) Aldi's sole involvement in this matter was limited to two issues. [Then Lieutenant] Aldi had agreed to allow the Chief State's Attorney's Office the use of the Norwich Police Department's booking area with which to process Mr. Malchman after they (the Chief State's Attorney's Office) arrested him. In addition, the Chief State's Attorney's Office had served a search warrant at Ponemah Mill in Taftville in regard to this matter, and then-

Lieutenant Aldi, another detective, and a uniformed officer stood by until a trailer-load of lumber could be seized.

In his numerous conversations, Mr. Malchman informed me that there were witnesses who would support his allegations. I have asked him for their names, and have been refused for all except for a very few, as noted below, being told that they are his "ace in the hole." In addition, Mr. Malchman stated he has hired a private detective named Sandra Parsnik to interview those witnesses and obtain statements from them. I asked for, and was assured by Mr. Malchman that I would receive in connection with this matter, copies of those statements. As of this date, I have received none.

The following witnesses identified by Mr. Malchman as having direct information to confirm and corroborate his allegations were interviewed:

**Interview of Carol Ryiz**

On May 11, 2001, as part of his initial complaint, Mr. Malchman stated that he became aware of statements made by Captain Aldi to one Carol Ryiz that "[we] don't want anyone else, just Malchman." Mr. Malchman stated that Carol Ryiz had articulated this in a deposition to a Glastonbury attorney whom Mr. Malchman refused to name. Mr. Malchman informed me that Ryiz could be found at the Knights of Columbus in Taftville. Note that Carol Ryiz is the girlfriend of Charles Lavallee, who was arrested and accused along with Mr. Malchman of the illegal dumping of hazardous waste.

Detective Lieutenant F. Ward and I subsequently arranged to contact Ms. Ryiz at said bar. We interviewed, and obtained a signed statement from her on May 15, 2001. She stated, in part, that she does <u>not</u> know any police officer named Bob Aldi, nor does she know any other officer named Bob. In addition, <u>no one</u> from the Norwich Police Department ever said anything to her in regards to [the raid on her house] by the Chief State's Attorney's Office. She stated that while she did give a deposition to an attorney, she never mentioned Bob Aldi because she does not know him.

On May 16, 2001 Mr. Malchman left me a voicemail stated that he had made an error; that Captain Aldi had made the comment to Charlie Lavallee, not Carol Ryiz. There was no explanation as to how this error occurred, even though Mr.

Malchman had, prior to this, insisted that it was Ryiz to whom Captain Aldi is alleged to have made the comment.

Case 3:01-cv-01877-MRK    Document 51-5    Filed 09/23/2004    Page 6 of 19

**Interview of Charles Lavallee**

On June 11, 2001, Lt. Ward and I interviewed Charles Lavallee after acquiescing to Mr. Lavallee's demand that we had to come to the Taftville Knights of Columbus bar if we wanted to speak with him. Mr. Lavallee gave a signed statement in which he stated, in part, that after being arrested for the alleged illegal dumping, he got a telephone call from someone he regarded as a State witness against him in the impending case. He stated that he subsequently contacted Judge Tamborra (since deceased), arguing that if, by admonishment of the Court at arraignment, he couldn't talk to the State's witnesses, then they should not be able to talk to him. Mr. Lavallee stated he was advised by Judge Tamborra to come to the Norwich Police Department (the call having been received at the Taftville Knights of Columbus bar) and make a complaint.

Mr. Lavalle stated he came to this PD and spoke to Sergeant R. Paradis, who referred him to Captain Aldi. After being informed of the facts by Mr. Lavallee, Captain Aldi made a telephone call after referring to a business card for a telephone number. Mr. Lavallee related that upon reaching the party, Captain Aldi said, "Matt, we have Charlie Lavallee here, he wants to have Gamache arrested." Mr. Lavallee then stated that Captain Aldi said to him "Schroeder says to tell you to cool your fucking jets'". Mr. Lavallee stated that Captain Aldi then told him (Lavallee) that [Investigator Schroeder] said that they were after Malchman, not him, so he (Lavallee), feeling relieved, did not pursue his complaint any further. Mr. Lavallee said he then left the police department.

I spoke with Captain Aldi regarding his recollection of this conversation. Captain Aldi informed me that he does not recall this interaction with Mr. Lavallee at all. Investigator Schroeder informed me that this case has been lengthy in duration, with a number of different aspects; he does not recall specifically having a telephone conversation with Captain Aldi regarding Lavallee.

**Interview of James Prindiville**

In the majority of his contacts, Mr. Malchman proffered the claim that a Mr. James Prindiville (an industrial hygienist with the Federal office of OSHA in Hartford) has stated that "Malchman is not involved", and "You (Malchman) were a victim". Mr. Malchman also insisted vehemently that Mr. Prindiville would make it clear as to how Captain Aldi fit into the alleged conspiracy.

Mr. Malchman also stated, in a conversation with Lt. Ward, that Mr. Prindiville told him that "the (contaminated) sand is buried where it should be". Also that Mr. Prindiville "went to Tufts University" and "discovered that Mr. Bogdansky's dog was poisoned by arsenic, not by the lead contamination" (Bogdansky being the initial complainant in this contaminated sand matter; his business occupied space in the Ponemah Mill, site of the violation).

Mr. Malchman also left me a voicemail message on June 7, 2001 at 1:52pm stating that he had contacted Jerry Soloman, the Chief Legal Counsel for OSHA. Mr. Malchman said that OSHA would contact me to tell me that [Chief State's Attorney's Investigator] Schroeder knew Mr. Malchman was not involved, and that Malchman's arrest was as the result of a plot against him (Malchman). At 3:15pm on the same date, Mr. Malchman called again, speaking with Executive Secretary V. Cox, and reiterating much the same information to her. Mr. Malchman also contacted Lt. Ward, and told him that [OSHA] Attorney Jerry Solomon in Boston had called him (Malchman) and had instructed him

(Malchman) to call Joseph Norman of OSHA [Hartford] because "Malchman was not involved".

I contacted the office of Federal OSHA in Hartford, speaking with Mr. Joe Norman, Mr. Prindiville's supervisor. He informed me that Mr. Malchman had contacted their office several times last week seeking their support in the matter of his arrest for illegal dumping, which they would not provide. Due to this, approval of their legal counsel, Jerry Soloman, would be necessary in order for me to interview Mr. Prindiville.

I contacted Attorney Jerry Soloman, legal counsel for OSHA, in Boston. He stated that, contrary to what Mr. Malchman had told me and Lt. Ward, he had spoken to Mr. Malchman only once, and it had been Mr. Malchman who had called him (Mr. Soloman has time logs of his phone calls). Mr. Soloman also stated that he did not say, nor would he have said, that Mr. Malchman was innocent of illegal dumping.

Mr. Soloman stated that he would allow me to interview Mr. Prindiville on the condition that no written statements be taken, and that the scope of the interview stay within the narrow issue of any facts that Mr. Prindiville may have that pertain directly on this investigation regarding Captain Aldi. I agreed to the interview with the stated restrictions.

On July 18, 2001 Lt. Ward and I interviewed Mr. James Prindiville at his office in Hartford. Also present were his supervisor, Joseph Norman, and his Union Steward, Paul Mangiafico. During the interview, I covered the issues that Mr. Malchman claimed Mr. Prindiville would have knowledge of.

Mr. Prindiville stated that he does not know Captain Aldi, knows nothing about any conspiracy, and he never told Mr. Malchman that he (Malchman) was the target of any such conspiracy, nor that the Governor was responsible for it. Mr. Prindiville further stated that he never went to Tufts University regarding any dead dog belonging to anyone. Further, he never told Mr. Malchman that the contaminated sand was "buried where it was supposed to be."

He stated that he has spoken to Mr. Malchman approximately 5 or 6 times on official business, because of referrals made to his office. On each occasion, he did not find sufficient facts necessary to allow Federal OSHA to become involved in the matter. He gave an example - that Federal OSHA requires an employee-employer relationship. Without an employee being part of the matter at hand, Federal OSHA cannot become involved, regardless of whatever other problems or issues may exist.

Mr. Prindiville stated that he did recall one conversation with Mr. Malchman in which Mr. Malchman told him that he (Malchman) was in a courthouse hallway, calling the prosecutor a "lesbian" as she was walking past; she heard him, and

complained to the judge about the comment. (This is in direct contrast to Mr. Malchman's frequent claim to me that it was Captain Aldi to whom he made this remark, and Captain Aldi whom he blames for informing the female prosecutor of such).

**Conclusion**

Mr. Malchman's complaint against Captain Aldi is multi-faceted in nature. He has accused Captain Aldi, in a vague and nebulous manner, of conspiring with numerous other individuals to commit a number of alleged illegal acts, all directed at him. Mr. Malchman has not provided any specific details in support these accusations. Despite the claims of having a number of witnesses who could corroborate his claims, Mr. Malchman would identify only three, refusing to identify the others.

The three witnesses who Mr. Malchman insisted could corroborate his claims of illegal activity and conspiracy were interviewed. The first (Ryiz), had absolutely none of the knowledge Mr. Malchman purported her to possess. The second (Lavallee, a co-defendant with Mr. Malchman), can only state that Captain Aldi made a telephone call, and apparently repeated what he was told by someone else at the other end of the telephone.

The third witness (Prindiville) not only possessed none of the knowledge that Mr. Malchman insisted he would have, but disputed the numerous statements and actions Mr. Malchman attributed to him. In fact, Mr. Prindiville related how Mr. Malchman told him of calling the prosecutor of his case a lesbian within her earshot, which contradicts Mr. Malchman's claim to me that it was Captain Aldi who told the prosecutor that he (Malchman) did so.

The witnesses proffered by Mr. Malchman as having knowledge of the alleged "conspiracy" against him have failed to corroborate any of his accusations. One, Mr. James Prindiville, who is independent of any personal association with Mr. Malchman, casts grave doubt on Mr. Malchman's voracity.

This criminal complaint is unfounded, and the investigation is closed.

# CITY OF NORWICH
## CONNECTICUT
### POLICE DEPARTMENT

Case Number: _____
Date: 5/15/01
Time started: 2:13 pm
Time ended: _____

**Statement of** Carol Ryiz

I, Carol Ryiz
of 31 Bay Mountain Dr.
date of birth 4/8/56
Town/City Griswold Ct

Make the following statement, without fear, threat or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

On 5/15/01 I spoke with Dep. Chief Warren Mocek and Lt. F. Ward of the Norwich Police Dept. I have not conversed with any other Norwich Police officers in recent times regarding a raid at my house by the State's Attorney's office. There were no Norwich officers that I saw during that raid. During the raid, the only guy I talked to was a guy named Schroeder from the State's Attorney's office. I don't know any officer named Bob Aldi, or any other officer named Bob, and no one from Norwich PD ever said anything to me about anything connected to this matter. I did give a deposition to an

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness: Lt. F. Ward
Signature: X Carol Ryiz
Witness: _____

Personally appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.
I notarized, endorse here: Dep Chf W.F. Mocek

Page 1 of 2 Pages

Form #12 Rev 10/90

# CITY OF NORWICH
## CONNECTICUT
### POLICE DEPARTMENT

Case Number: _____
Date: 5/15/01
Time started: _____
Time ended: 2 25/pm

Statement of  Carol Ryiz

I, Carol Ryiz  date of birth _____
of 31 Bay Mountain Dr  Town/City Griswold

Make the following statement, without fear, threat or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

attorney about an alleged dumping at the old Ponemah Mills, but I never mentioned Bob Aldi because I don't know him.

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness  LT. J Ward   Signature  X Carol Ryiz
Witness _____

Personally appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.
I notarized, endorse here: Dep Chf W L Nash

Page 2 of 2 Pages

Form #12  Rev. 10/90

# CITY OF NORWICH
## CONNECTICUT
## POLICE DEPARTMENT

Case Number _____
Date  6/11/01
Time started  1130
Time ended  _____

**Statement of**  Charles H. Lavallee

I, Charles H. Lavallee    date of birth  11-10-51
of  31 Bay Mtn. Dr.    Town/City  Griswold

Make the following statement, without fear, threat or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

About two weeks after I was arrested by the State's Attorney's Office, and the arraignment in court where the judge said to have no contact with the state witnesses, I got a telephone call at the Knights of Columbus hall. The caller was Jean Gamache. He ID'd himself by his conversation — "hey, we all done across the street?" I did not talk to him and hung up the phone. I spoke to Judge Tamborra at his home around 8pm that night about this phone call. I spoke to Tamborra because I felt that if I could not talk to the state's witness per court

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness _____    Signature  K Charles H. Lavallee
Witness _____

Personally appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.
I notarized, endorse here: _____

Page  1  of  3  Pages

Form #12  Rev. 10/90

# CITY OF NORWICH
## CONNECTICUT
## POLICE DEPARTMENT

Case Number _____
Date 6/11/01
Time started _____
Time ended _____

Statement of  Charles H. Lavallee

I, Charles H. Lavallee   date of birth 11-10-51
of 31 Bay Mtn. Dr.   Town/City Griswold

Make the following statement, without fear, threat or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

order, then they shouldn't be able to talk to me. Judge Tamborra told me to go to the police dept. and have him arrested.

I went to Norwich PD and spoke to Sgt. Paradis, who brought me to Capt. Aldi's office. I told Aldi that Judge Tamborra told me to come down and have Gamache arrested. He took a card from his desk and dialed a number, then hung up the phone. A short time later, Aldi's phone rang. Aldi said "Matt, we got Charlie Lavallee here, he wants to have Gamache arrested." Aldi then told me that Schroeder said "Tell

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness _____
Witness _____   Signature X Charles H. Lavallee

Personally appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.

I notarized, endorse here: _____

Page 2 of 3 Pages

Form #12 Rev. 10/90

# CITY OF NORWICH
## CONNECTICUT
### POLICE DEPARTMENT

Case Number _____

Date 6/11/01

Time started _____

Time ended 1157

Statement of **Charles H. Lavallee**

I, **Charles H. Lavallee**

of **31 Bay Mtn. Dr.**

date of birth **11-10-51**

Town/City **Griswold**

Make the following statement, without fear, threat or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

Charlie to cool his fucking jets." I heard Aldi ask Schroeder about some jobs there at the State's Attorney's Office.

At that point, I felt relieved, because Aldi said that Schroeder said that they were not after me, they wanted Malchman. I didn't pursue a complaint against Gamache any further. Capt. Aldi then walked me out of the police dept.

Nothing Further

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness _____

Witness _____

Signature **Charles H. Lavallee**

Personally appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.

I notarized, endorse here: _____

Page **3** of **3** Pages

Form #12 Rev. 10/90