**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

DANIEL G. MALCHMAN                          :        NO.:  3:01 CV 1877 (MRK)
                                            :
v.                                          :
                                            :
CITY OF NORWICH                             :        JUNE 15, 2004

<u>**AFFIDAVIT OF WARREN L. MOCEK**</u>

The undersigned, after being duly cautioned and sworn, hereby deposes and

says:

1.      I am over eighteen (18) years of age.

2.      I believe in the obligations of an oath.

3.      I am currently a law enforcement officer licensed and certified by the State

        of Connecticut and I have been so licensed and certified for more than 25

        years.

4.      I am currently employed by the City of Norwich as the Deputy Chief of

        Police and have been so employed for 4 years.

5.      I am familiar with the allegations of the plaintiff's complaint.

6.      In connection with my employment as the Deputy Chief of Police for the

        City of Norwich, I am responsible for the day-to-day operations of the

        Department and all of its separate divisions, Patrol, Detective, Records,

        and Training, including the conduct and oversight of internal affairs

        matters, reporting to the Chief of Police.

Exhibit C                                   Page 1 of 19

7.    At my direction, officers of the Department reviewed the official records of the Department for all references to Daniel Malchman.

8.    The official records of the City of Norwich include written reports and other records stored in computer databases.

9.    Each entry into record-keeping computer is contemporaneously made by employees of the City of Norwich Police Department in the course of the business of the Department and making and keeping such records is part of the business of the Department.

10.    The written reports generated by officers of the Department in connection with their duties are made in the course and scope of their employment as police officers and for the business of the Department and making and keeping such records is part of the employment of these officers and the business of the Department.

11.    During that records review, the officers compiled each and every report they could locate that referenced Malchman.

12.    I personally reviewed each and every report complied by the officers pertaining to or referencing Malchman that could be located.

13.    From January 1, 1990 until January 10, 2003, officers of the Department responded to more than 70 incidents in which Malchman was involved.

14.    From January 1, 1990 until January 10, 2003, of the more than 70 incidents to which officers responded, at least 47 incidents generated

written reports.

15.     Many of the incidents required officers to return on subsequent occasions to conduct follow-up investigations.

16.     On May 19, 1990, an officer was dispatched to Mr. Malchman's residence to take a complaint of a roaming canine.  The officer did not observe the canine but attempted to contact the animal's owner.  Following further investigation, the animal's owner was issued an infraction ticket for allowing a dog to roam.

17.     On August 9, 1991, an officer was dispatched to Ponemah Mills building No. 2 upon Mr. Malchman's report of 30 broken windows in the boiler room near the rear of the building.  Malchman reported he believed the windows were broken by youths who lived in the area between August 1 and August 8, 1991.  Not having any identifiable suspects, no arrests were made. The investigating officer caused a note to be placed at "Line Up" for on-duty patrol officers to make periodic checks of the Ponemah Mills to try and prevent future vandalism.

18.     On September 27, 1992, an officer was dispatch to investigate a complaint of improper dumping from Malchman.  Malchman complained someone dumped old trees, books, magazines and other trash on his property at 509 Norwich Avenue.  Malchman examined the trash and found a name of a person on many of the magazines and other papers.  While that person was deceased, an investigation revealed that in cleaning up the

decedent's house, a relative paid a person known as "Mr. Gladue" to remove and dispose of the trash.  Gladue did not take the trash to the landfill as promised, instead dumping it on Malchman's property. Feeling very upset, the relative paid Malchman to have the trash removed and Malchman insisted no arrest should be made. The investigating officer caused a note to be placed at "Line Up" for on-duty patrol officers to make periodic checks of the area near 509 Norwich Avenue because Malchman was afraid Gladue would dump again.

19.    On May 11, 1994, a person reported that pilings were being removed from the Thames River without permission. The property from which the pilings were being removed was co-owned by Malchman.  The party removing the pilings refused to stop removing the pilings unless told to do so by the police.  An officer interviewed the party removing the pilings and brought Malchman and that party to an agreement where the removed pilings would be replaced and no further removals would occur.

20.    On November 19, 1995, officers responded to a burglary-in-progress of a warehouse owned by Malchman.  The officers apprehended the accused, a juvenile, and promptly arrested him. The juvenile was released to his foster mother and attorney on a promise to appear in court.

21.    On January 30, 1996, an officer was dispatched to investigate Malchman's complaint that 4 packing crates were stolen from outside a building he owns at 599 Norwich Avenue.  The officer checked the area but

discovered no evidence and was unable to conduct a neighborhood canvass due to the area has no occupants or residents. The officer placed a note in "Line Up" to monitor the area.

22.    On March 14, 1996, an officer responded to a complaint from Malchman concerning a dispute Malchman had with a former tenant at Ponemah Mills building no. 3.  Malchman complained that the former tenant had failed to remove all of its property following an eviction and had removed electrical panels from the premises, rendering the building without electricity.  Malchman claimed that the panels belonged to him as they were affixed to the building despite the former tenant having paid for them. The investigating officer spoke with a City of Norwich electrical inspector, a member of the Planning and Zoning Department, the former tenant, and after consultation, the State's Attorney declined prosecution. The dispute escalated to a series of incidents through April 3, 1996 where officers interceding on several occasions over the electrical panels.  The former tenant established that he paid for the panel and the State's Attorney declined prosecution.

23.    On March 28, 1996, Malchman complained that the former tenant described in the preceding paragraph threatened Malchman with his fist and stated "I'm going to get you." Malchman felt that the former tenant intended to harm him. The responding officer interviewed the former tenant who conceded making an all-to-common rude gesture with his

hand and middle finger but denied threatening Malchman. Malchman

came to headquarters and made a statement. The officer applied for an

arrest warrant for the former tenant.

24.    Later on March 28, 1996, Malchman called the police complaining that the

same former tenant had vandalized his motor vehicle. Individuals at

Malchman's business saw the former tenant do something to the car.

Officers investigated the incident and arrested the former tenant for

criminal mischief.

25.    On July 18, 1996, officers were dispatched to Malchman's business

regarding a boundary dispute between neighboring businesses.

Malchman's business was the entity which was responsible for parking the

vehicles and obstructing access to the neighboring business.  It was

discovered that Malchman's business had a lease for those spots.

26.    On November 1, 1996, Malchman complained that someone had spray-

painted a swastika on his motor vehicle at some point during the previous

night. Photographs were taken and Malchman was interviewed and stated

he thought a former neighbor, Thomas Kirker, might have committed the

crime. The matter was referred to the day shift for a neighborhood

canvass which did not yield any information.

27.    On August 15, 1997, Elaine Malchman struck a medium sized white

canine that wandered on to New London Turnpike.  An accident report

was generated by a member of the Department.

28.    On November 19, 1997, Elaine Malchman, the plaintiff's spouse,

complained of a large white dog roaming in her neighborhood, had been

loose in her yard and had harassed her.  Officers investigated and

contacted the owner, John A. Bogdanski, who was given a warning notice

for roaming and 21 days to license the animal.

29.    On or about January 17, 1998, Malchman called the police complaining of

a burglary at his business. An officer responded and investigated the

crime, took an inventory of the stolen items, interviewed a suspect and

confirmed that suspect's alibi.

30.    On January 31, 1998, Malchman complained that an individual was

illegally dumping refuse on his property. The police investigated after

Malchman detained the accused and issued the accused an infraction

after requiring the accused to clean up the mess.

31.    On September 10, 1998, the Norwich Police Department assisted the

State's Attorney in the service of three arrest warrants, one of which was

for Malchman.  Malchman was photographed, fingerprinted and taken to

Norwich Superior Court for bail. He met the bail and was released.

32.    On October 26, 1998, an officer was dispatched to Malchman's residence

for a report of harassment. The investigation revealed that Malchman had

received a harassing letter in his mail. The letter was tagged as evidence

for possible fingerprinting.  Malchman believed his neighbor John A.

Bogdanski was responsible.

33.    On November 3, 1998, an officer was dispatched to Malchman's

residence for a report of harassment. The investigation revealed that

Malchman had received another harassing letter in his mail. The letter was

tagged as evidence for possible fingerprinting. After several unsuccessful

attempts, the officer spoke with Bogdanski who denied sending the letters

but agreed to provide a handwriting sample.  The handwriting sample was

analyzed by the Connecticut State Police Forensic Science Laboratory

which did not reveal any identifiable fingerprints and concluded that

Bogdanski was not the author of the letters.

34.    On April 12, 1999, an officer was dispatched to Malchman's residence to

respond to another item of harassing mail. The letter was tagged as

evidence for possible fingerprinting.  Malchman believed his neighbor

John A. Bogdanski was responsible.  This letter was submitted to the

Connecticut State Police Forensic Science Laboratory. No analysis could

be undertaken because Bogdanski refused to provide an additional

handwriting sample. No latent identifiable fingerprints were discovered on

the letter.

35.    On April 23, 1999, a resident of Plain Hill Road reported damage to her

mailbox by a baseball bat-type implement.  Further investigation revealed

a dozen other mailboxes similarly damaged.  Elaine Malchman, the

plaintiff's spouse, made a similar complaint. Several homeowners were

interviewed and a note was placed in the "Line Up" for increased patrols in

this area.

36.     On May 20, 1999, Malchman complained that his neighbor's dog was roaming while he was out of town. Malchman's spouse, Elaine, reported that the dog, owned by John Bogdanski, came off Bogdanski's property and approached her while she was walking her miniature schnauzer. Fearing a fight between the dogs, she picked it up and ran off. The officer investigated and learned Bogdanski's dog had jumped the fence and was issued a warning.

37.     On May 26, 1999, Malchman complained that someone was illegally dumping on his property at 555 Norwich Avenue. The investigating officer photographed the scene and examined the refuse to locate possible identifying documents. Several were located and taken as evidence.

38.     On November 3, 1999, Malchman reported that electronics in boxes were stolen from a truck at his business. Despite the fact that Malchman refused to give a written statement, officers investigated a number of suspects over the following thirty days.  The officers eventually applied for arrest warrants for two suspects.  The warrants were refused by the State's Attorney because they did not have enough specific information which was in the possession of Malchman but who was unwilling to divulge.  On February 24, 2000, Malchman asked the officer to drop the entire matter and stated he was willing to forget the entire incident.

39.     On January 2, 2000, Malchman was given an infraction ticket for driving

42 mph in a posted 25 mph zone. He was clocked using radar.

40.    On March 24, 2000, Malchman called police wanting to document an incident where an individual allegedly threatened him.  That individual was a suspect in a theft from Malchman and a business partner. State's Attorney's office declined to prosecute.

41.    On March 25, 2000, Malchman reported that a vehicle stored in the parking lot of his business but owned by another person was broken into and the radio was taken. The victim was notified. The officer was unable to conduct a neighborhood canvass due to the area has no occupants or residents.

42.    On April 28, 2000, officers responded to a complaint by Malchman that his neighbor, John A. Bogdanski, caused a disturbance by making a "face" at Malchman's children who were waiting for the school bus. Both Malchman and his spouse, Elaine, reported that Bogdanski drove by the children slowly and smiled at them. Later, Malchman stated that Bogdanski made an "awful" face at his children.  Malchman was concerned for the safety of his children and told the officers that if nothing was done, he would take things into his own hands. The investigating officer concluded there was no probable cause for an arrest whether Bogdanski was smiling or making an "awful" face.  Bogdanski's explanation for his behavior was that he was driving slowing because he knows young children are in the area.

43.    On July 26, 2000, an officer was dispatched to a disturbance at the

Pagoda Restaurant where Malchman complained that Bogdanski had

violated a no-contact order.  At the restaurant, Malchman was unable to

produce a copy of the order. The officers interviewed Bogdanski and other

witnesses. Bogdanski denied instigating any confrontation with Malchman

and insisted that Malchman started the incident.  Malchman's meal

companion's statement confirms that Bogdanski did nothing until

Malchman stated that Bogdanski was "a sick man."  The investigating

officer received a copy of a letter that stated a no-contact order existed but

did not receive an actual copy of the order. Absent such order, no action

was taken.

44.   On July 28, 2000, Malchman called the police to complain that he received

a harassing phone call.  Malchman was certain that the caller was

Bogdanski.  The investigating officer contacted the phone company

security office regarding the call. The company indicated such information

could not be retrieved.  Accordingly, the officer concluded no probable

cause existed to charge Bogdanski.

45.   On July 31, 2000, Malchman contacted police to report a larceny at his

business. Malchman reported that someone must have tampered with a

company vehicle, removing parts from the motor vehicle and taking a

fishing pole.

46.   On August 18, 2000, Malchman reported to police that he had lost his

wallet.  He believed he may have left it or dropped it at a local donut shop.

47.   On August 25, 2000, Elaine, Malchman's spouse, called police to report

that someone had left an orange-colored rubber penis in the driveway of

her home. Malchman was not at home when the complaint was made.

Malchman told the investigating officer that it was put there by John A.

Bogdanski based on the on-going feud they were having.  The rubber

penis was taken as evidence.  A canvass did not uncover any witnesses.

The rubber penis was processed for latent fingerprints but no potentially

identifiable latent fingerprints were developed.

48.   On October 17, 2000, Malchman contacted police to complain that six

small motorcycles were stolen from his business during the evening and

overnight hours. The investigating officer learned the perpetrators cut the

fence where they removed the motorcycles and where they forced entry

into the building.  Later, the officer conducted a security check of the

business and located fresh tire marks consistent with the removal of the

motorcycles.  Further investigation with Malchman's security officer and

recent rain allowed the officer to determine the time of the theft. The

officer attempted to obtain fingerprints from items handled inside the

storage area but not taken.  No prints were obtained.  The following day,

Malchman telephoned police to report all of the motorcycles and

accessories were recovered approximately 50 feet beyond the hole in the

fence hidden in between abandoned vehicles at the bottom of a bank.

49.   On December 8, 2000, an individual who owed Malchman money claimed

that Malchman had stolen his vehicle.  The matter was investigated and it was determined that the individual had given the vehicle to Malchman as collateral based on some sort of verbal lien agreement. The officer determined the vehicle was not stolen and advised the parties to treat it as a civil matter.

50.    On February 3, 2001, police investigated a break-in at 599 Norwich Avenue, a building owned by Malchman.  No suspects were located and nothing appeared to have been stolen.  Malchman refused the officer's plan to photograph the scene and fingerprint the broken lock.  Malchman refused a criminal complaint and merely wanted increased patrols.

51.    On May 11, 2001, Malchman telephoned me and complained that Captain Robert Aldi was involved in a wide-ranging criminal conspiracy, whose ultimate goal was to maliciously prosecute Malchman for crimes that he states he did not commit.   I interviewed Malchman who reluctantly proffered three witnesses to substantiate his claims. The first witness had no knowledge whatsoever. The second witness had only hearsay knowledge. The third witness, not only did not possess the knowledge and information claimed by Malchman, but disputed the numerous statements and actions Malchman attributed to him.  Based on the absence of evidence, the complaint was dismissed and the matter closed.

52.    On June 29, 2001, Malchman sold a used car to an individual and accepted some cash and an older car as a trade-in. The individual left with

the newly purchased car without filling out the paperwork to transfer the older car to Malchman. The investigating officer issued an "attempt to locate" notice on the individual and the newly purchased car. The individual returned and completed the paperwork before the police located him.

53.    On July 26, 2001, Malchman reported that a vehicle was stolen from his business. He had sold it to an individual under an installment plan but sufficient payments were missed and Malchman arranged to have it repossessed. Malchman's repossession agent, after obtaining the vehicle, left the vehicle outside Malchman's business. The owner's husband, after learning of the repossession, went out and retook the vehicle, parking it inside his driveway blocked by a van to prevent a second repossession. Officers investigated, guarded the vehicle, arranged to have the van moved by the city wrecker and returned the vehicle to Malchman. The officers applied for an arrest warrant which was approved, but vacated by the State's Attorney.

54.    On October 10, 2001, Malchman called the police to report a harassing telephone call from an individual who allegedly said "I went to the State's Attorney's office, I will be in court and I'm going to make sure you get what you deserve." Officers investigated and applied for a warrant for the arrest of the caller. The warrant was refused by the State's Attorney.

55.    On October 13, 2001, Malchman called police to report a theft from his

business.  Malchman sold a used car to an individual who gave him a cash deposit. After placing the money in his desk drawer, Malchman left the room for a brief time.  After the person left with the car, Malchman checked the drawer and discovered the money was gone. Malchman's security camera recorder the incident on videotape.  The person taking the money matched the person who purchased the car. The officer applied for an arrest warrant and later apprehended the individual.

56.    On October 29, 2001, Malchman called the police to tow an abandoned motor vehicle with heavy front end damage from his property on Thermos Avenue. An investigation over the next several months revealed it belonged to a Norwich resident who was told to remove the vehicle. The vehicle did not meet the statutory requirements for the police to order a tow.

57.    Later on October 29, 2001, Malchman called the police to tow another abandoned motor vehicle from his property on Thermos Avenue. An investigation revealed that it did not appear in any motor vehicle registration database. The vehicle met the statutory requirements for the police to order a tow and it was towed to a nearby junkyard.

58.    Later on October 29, 2001, Malchman called the police to tow another abandoned motor vehicle from his property on Thermos Avenue. An investigation revealed the last owner of record was located in Rhode Island. After further investigation and after following the statutory

procedure, the vehicle met the statutory requirements for the police to

order a tow and it was towed to a nearby junkyard.

59.    Later on October 29, 2001, Malchman called the police to tow another

abandoned motor vehicle with heavy front end damage from his property

on Thermos Avenue. An investigation over the next several months

revealed it belonged to a Norwich resident who was told to remove the

vehicle. The vehicle did not meet the statutory requirements for the police

to order a tow.

60.    On November 1, 2001, Malchman struck the bumper of a parked car while

he was trying to park next to that car.  Norwich police investigated,

prepared a report and determined no charges applied.

61.    On July 9, 2002, Malchman called police after he felt threatened by Robert

Aldi, a retired Norwich police officer.  Aldi allegedly stated "look who you

see when you are not carrying a gun." Several people witnessed the

incident, including a detective with the Connecticut State Police who was

in plain clothes. Based on the investigation, the officer concluded no crime

occurred.

62.    On September 28, 2002, Malchman called the police to complain that

John A. Bogdanski violated a no-contact order issued by a Connecticut

Superior Court Judge in connection with a criminal case against

Malchman in which Bogdanski is a witness. Malchman complained that

Bogdanski walked past him on the street, stopped approximately three

feet from Malchman, stared, and walked away. No words were exchanged.  A witness corroborated Malchman's account. Bogdanski admitted walking on the street and stated he did not speak to Malchman or step on Malchman's property.  The investigating officer received documentation from Malchman substantiating the no-contact order but concluded that no violation occurred as the order prohibits physical or verbal contact.  The State's Attorney reviewed the investigating officer's report and agreed no violation occurred.

63.    On November 17, 2002, Malchman call the police to complain that someone had illegally dumped old construction materials and other refuse on his property at 535 Norwich Avenue.  The investigating officer found identifying documents which allowed the officer to trace the debris back to the person who later admitted illegally dumping the materials and debris. That person took full responsibility and, under police supervision, removed the materials from Malchman's property.

64.    On January 14, 2003, Malchman called the police and demanded that the illegal dumping incident which occurred on November 18, 2002 be re-opened and the suspect arrested immediately. An arrest warrant was completed and was submitted to the State's Attorney who refused to forward the warrant to a judge for review because the area was cleaned up.

65.    On September 3, 2003, Malchman complained that he had received

harassing mail.  An officer was dispatched who recovered a black piece of white paper which wrapped a recent newspaper article about Malchman's impending criminal trial. Malchman believed John A. Bogdanski was the sender but had no proof.  The items were taken as evidence and submitted to the Connecticut State Police Forensic Laboratory for latent print analysis and handwriting comparison. No identifiable prints were located and the author of the address on the envelope could not be positively identified.

66.    On September 15, 2003, Malchman contacted the police to report that he was the victim of harassing statements by Peter Oddo.  Malchman complained that Oddo told Malchman's business partner, Brian Burchman, that Malchman and other person burned down the Jewett City Mill, a property owned by Malchman, and Oddo would tell the police unless another individual withdrew a DMV complaint against Oddo.  During the investigation, Oddo denied making the statements and Malchman was informed that Oddo's statements were not criminal violations of the law but might be the grounds for a civil action.

67.    On January 10, 2004, Malchman contacted the police regarding the discovery of 7.62 mm ammunition and approximately 6.3 grams of marihuana, seeds and leafy material that was discovered in a storage unit following the default by the tenant.  An officer responded, took a report and took the ammunition and contraband as evidence.

68.    Robert Aldi is a former police officer who was employed by the

Department from 1974 until 2001.

69.    I am responsible for the care, custody and maintenance of the internal

affairs reports of the City of Norwich Police Department.

70.    Affixed hereto as Attachment 1 is a true and accurate copy of the internal

affairs report that I wrote, along with supplemental reports, for a complaint

made on May 11, 2001, the original being on file in the official records of

the City of Norwich Police Department.

_____/s/_____
WARREN L. MOCEK


STATE OF CONNECTICUT        :

                            :       *ss: Norwich*

COUNTY OF NEW LONDON        :


Subscribed and sworn to before me this        day of June 2004.


_____/s/_____
Notary Public/Commissioner
of the Superior Court