OSUCH> v. <GREGORY>, (Conn. 2004)

DAVID S. <OSUCH>, PRISONER v. STATE TROOPER <GREGORY> and JOSEPH E. LOPEZ

CASE NO. 3:03CV1687(WWE)

United States District Court, D. Connecticut

February 13, 2004

**ORDER OF DISMISSAL**

WARREN EGINTON, Senior District Judge

The plaintiff, David S. Osuch ("Osuch"), an inmate currently confined at the Garner Correctional Institution in Newtown, Connecticut, brings this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He names as defendants Connecticut State Trooper <Gregory> and Assistant Public Defender Joseph E. Lopez. <Osuch> alleges that defendant <Gregory> arrested him without probable cause because the arrest warrant was not signed. In addition, he alleges the defendant Lopez afforded him ineffective assistance of counsel and conspired with the prosecutor to secure his guilty plea. For the reasons that follow, the complaint will be dismissed without prejudice.

I. Standard of Review

Osuch has met the requirements of 28 U.S.C. § 1915(a) and has been granted leave to proceed in forma pauperis in this

**Page 2**

action. When the court grants in forma pauperis status, section 1915 requires the court to conduct an initial screening of the complaint to ensure that the case goes forward only if it meets certain requirements. "[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious; fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915 (e)(2)(B)(i) — (iii).

> An action is "frivolous" when either: (1) "the `factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is `based on an indisputably meritless legal theory.'" Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). A claim is based on an "indisputably meritless legal theory" when either the claim lacks an arguable basis in law, Benitez v. Wolff, 907 F.2d 1293, 1295 (2d Cir. 1990) (per curiam), or a dispositive defense clearly exists on the face of the complaint. See Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995).

Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The court construes pro se complaints liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, "when an in forma pauperis plaintiff raises a cognizable claim, his complaint may not be dismissed sua sponte for frivolousness

Exhibit H

**Page 3**

under § 1915(e)(2)(B)(i) even if the complaint fails to `flesh
out all the required details.'" Livingston, 141 F.3d at 437
(quoting Benitez, 907 F.2d at 1295). The court exercises
caution in dismissing a case under section 1915(e) because a claim that
the court perceives as likely to be unsuccessful is not necessarily
frivolous. See Neitzke v. Williams, 490 U.S. 319, 329 (1989).

    A district court must also dismiss a complaint if it fails to state a
claim upon which relief may be granted. See
28 U.S.C. § 19159e)(2)(B)(ii) ("court shall dismiss the case at any
time if the court determines that . . . (B) the action or appeal . . .
(ii) fails to state a claim upon which relief may be granted"); Cruz v.
Gomez, 202 F.3d 593, 596 (2d Cir. 2000) ("Prison Litigation Reform
Act . . . which redesignated § 1915(d) as § 1915(e) []
provided that dismissal for failure to state a claim is mandatory"). In
reviewing the complaint, the court "accept [s] as true all factual
allegations in the complaint" and draws inferences from these allegations
in the light most favorable to the plaintiff. Cruz, 202 F.3d at
596 (citing King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999)).
Dismissal of the complaint under 28 U.S.C. § 1915 (e)(2)(B) (ii), is
only appropriate if "`it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim

**Page 4**

which would entitle him to relief.'" Id. at 597 (quoting
Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In addition,
"unless the court can rule out any possibility, however unlikely it might
be, that an amended complaint would succeed in stating a claim," the
court should permit "a pro se plaintiff who is proceeding
in forma pauperis" to file an amended complaint that states a
claim upon which relief may be granted. Gomez v. USAA Federal
Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999).

    A district court is also required to dismiss a complaint if the
plaintiff seeks monetary damages from a defendant who is immune from
suit. See 28 U.S.C. § 1915(e)(2)(B)(iii); Spencer v.
Doe, 139 F.3d 107, 111 (2d Cir. 1998) (affirming dismissal pursuant
to § 1915(e)(2)(B) (iii) of official capacity claims in § 1983
action because "the Eleventh Amendment immunizes state officials sued for
damages in their official capacity").

II. Discussion

    In order to state a claim for relief under section 1983 of the Civil
Rights Act, Osuch must satisfy a two-part test. First, he must allege
facts demonstrating that the defendants are persons acting under color of
state law. Second, he must allege facts demonstrating that he has been
deprived of a

**Page 5**

constitutionally or federally protected right. See Lugar v.
Edmondson Oil Co., 457 U.S. 922, 930 (1982); Washington v.
James, 782 F.2d 1134, 1138 (2d Cir. 1986).

    A. Injunctive Relief

    Osuch requests injunctive relief from the defendants in the form of
orders that both defendants be suspended without pay while disciplinary
charges against them are resolved, both defendants be investigated by a
state grand jury for obstruction of justice and conspiracy, defendant
Lopez be demoted, his guilty plea be withdrawn, his conviction be
expunged and both defendants be prohibited from transferring assets or
influencing correctional staff to transfer him without his consent.

    1. Requests Relating to Osuch's Conviction

    A claim for injunctive relief challenging a conviction is not

cognizable in a civil rights action. "A state prisoner may not bring a civil rights action in federal court under [section] 1983 to challenge either the validity of his conviction or the fact or duration of his confinement. Those challenges may be made only by petition for habeas corpus." Mack v. Varelas, 835 F.2d 995, 998 (2d Cir. 1987) (citing Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973)). Thus, if Osuch seeks to withdraw his plea or have his conviction

**Page 6**

expunged, he must file a petition for a writ of habeas corpus,

The court is unable to construe the complaint as a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. A prerequisite to habeas corpus relief is the exhaustion of all available state remedies. See O'Sullivan v, Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509, 510 (1982); Dave v. Attorney General of the State of New York, 696 F.2d 186, 190 (2d Cir. 1982), cert. denied, 464 U.S. 1048 (1982); 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is not jurisdictional; rather, it is a matter of federal-state comity. See Wilwording v. Swenson, 404 U.S. 249, 250 (1971) (per curiam). The exhaustion doctrine is designed not to frustrate relief in the federal courts, but rather to give the state court an opportunity to correct any errors which may have crept into the state criminal process. See id. "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,. . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." See O'Sullivan, 526 U.S. at 845.

**Page 7**

The Second Circuit requires the district court to conduct a two-part inquiry. First, the petitioner must have raised before an appropriate state court any claim that he asserts in a federal habeas petition. Second, he must have "utilized all available mechanisms to secure appellate review of the denial of that claim." Lloyd v. Walker, 771 F. Supp. 570, 573 (E.D.N.Y. 1991) (citing Wilson v. Harris, 595 F.2d 101, 102 (2d Cir. 1979)). "To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state." Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995) (internal citations and quotation marks omitted). See also Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) ("[T]he exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition."); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) (same).

Osuch does not allege facts in his complaint suggesting that he has exhausted his state court remedies before commencing this action. Thus, the court cannot construe this complaint as a petition for a writ of habeas corpus.

2. Requests Relating to Charges Against Defendants

**Page 8**

Osuch asks this court to order the demotion of defendant Lopez, the suspension of both defendants and a state grand jury investigation.

"Generally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989) (citing Rondeau v. Mosinee Paper Co., 422 U.S. 49, 57 (1975)). To demonstrate irreparable harm, plaintiff must show an "`injury that is neither remote nor speculative,

but actual and imminent and that cannot be remedied by an award of
monetary damages.'" Forest City Daly Housing, Inc. v. Town of North
Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) (quoting Rodriguez
v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998)). In addition, a federal
court should grant injunctive relief against a state or municipal
official "only in situations of most compelling necessity." Vorbeck
v. McNeal, 407 F. Supp. 733, 739 (E.D. Mo.), aff'd,
426 U.S. 943 (1976).

    To the extent that Osuch seeks the criminal prosecution of either
defendant, his claim is not cognizable. An alleged victim of a crime does
not have a right to have the alleged perpetrator investigated or
criminally prosecuted. See S. v. D., 410 U.S. 614, 619 (1973)
("a private citizen lacks a

**Page 9**
judicially cognizable interest in the prosecution or nonprosecution
of another"); Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir.
1988) (neither member of public at large nor victim of a crime has
constitutional right to have defendant prosecuted).

    Regarding other disciplinary action, research has revealed no federal
constitutional right to have disciplinary proceedings instituted against
any defendant. Because Osuch has no right to the requested relief, the
court concludes that there is no compelling necessity for this
injunction. In addition, even if these claims were cognizable, Osuch has
not demonstrated that an award of money damages would not have been
sufficient to address his injuries. Thus, all claims seeking injunctive
relief against the defendants in the form of disciplinary actions or
criminal investigations are dismissed.

        3. Request Relating to Transfer

    Osuch asks the court to order the defendants not to exert any influence
over correctional staff to have him transferred to any other correctional
facility. Osuch has no constitutionally protected right to be confined in
any particular correctional facility. See Olim v. Wakinekona,

**Page 10**
461 U.S. 238, 248 (1983) (inmates have no right to be confined in a
particular state or a particular prison within a given state);
Meachum v. Fano, 427 U.S. 215, 225 (1976) (inmate has no
protected interest in avoiding transfer to prison with more severe rules
or more disagreeable conditions). Thus, this request also is denied.

        4. Request Regarding Defendants' Assets

    Finally, Osuch asks the court to order the defendants not to transfer
any assets during the pendency of this action. Osuch has alleged no fact
suggesting that either defendant has taken steps to hide or transfer
assets. Thus, this request is based only on Osuch's speculation about
possible events.

    "[I]nterim injunctive relief is an `extraordinary and drastic remedy
which should not be routinely granted.'" Buffalo Forge Co. v.
Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (quoting
Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir.
1977)). In this circuit the standard for injunctive relief is well
established. To warrant preliminary injunctive relief, the moving party
"must demonstrate (1) that it will be irreparably harmed in the absence
of an injunction, and (2) either (a) a likelihood of success on the
merits or (b) sufficiently serious questions going to the merits of the
case to make them a fair ground for

**Page 11**
litigation, and a balance of hardships tipping decidedly in its
favor." Brewer v. West Irondequoit Central Sch. Dist.,
212 F.3d 738, 743-44 (2d Cir. 2000).

Speculation does not satisfy the requirement that Osuch demonstrate that he will suffer irreparable harm should the relief be denied. Accordingly, this request for relief is denied.

B. State Trooper <Gregory>

<Osuch> alleges that he was arrested without probable cause because the copy of the arrest warrant affidavit he received was not signed by a judge. Osuch later pled guilty to the charges of assaulting correctional officers.

The Supreme Court has held that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus, if a criminal defendant pleads guilty to an offense, he may not later raise a Fourth Amendment challenge to any events preceding the plea. See United States v. Gregg, No. 01 CR, 501(LAP), 2002 WL 1808235, at *2 (S.D.N.Y. Aug. 6, 2002).

**Page 12**

Accordingly, courts have recognized that a conviction, either after trial or pursuant to a guilty plea, demonstrates probable cause for the arrest and bars a false arrest claim. See United States v. Arango, 966 F.2d 64, 66 (2d Cir. 1992) (holding that guilty plea constituted waiver of right to object to constitutionality of search of vehicle); Cameron v. Fogarty, 806 F.2d 380, 388-89 (2d Cir. 1986) (concluding that "where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause); Perlleshi v. County of Westchester, No. 98 CIV. 6927(CM), 2000 WL 554294, at *3-*4 (S.D.N.Y. Apr. 24, 2000) (holding that plaintiff's guilty plea defeated his claim that defendants lacked probable cause to arrest and prosecute him); Papeskov v. Brown, No. 97 Civ. 5351, 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) (holding that guilty plea to lesser charge barred false arrest claim) (collecting cases).

Osuch alleges that he pled guilty to the assault charge. Thus, his false arrest claim is barred and all claims against defendant <Gregory> are dismissed pursuant to 28 U.S.C. § 1915 (e)(2)(B) (ii). <Osuch also alleges that his guilty plea was invalid because he was afforded ineffective assistance of counsel. As discussed below, the court cannot consider that

**Page 13**

claim at this time.

C. Public Defender Lopez

The court next considers Osuch's claims against defendant Lopez, his public defender.

A defendant acts under color of state law when he exercises "some right or privilege created by the State. or by a person for whom the State is responsible," and is "a person who may fairly be said to be a state actor." See Lugar, 457 U.S. at 937. Generally, a public employee acts under color of state law when he acts in his official capacity or exercises his responsibilities pursuant to state law. See West v. Atkins, 487 U.S. 42, 50 (1988). The Supreme Court

has recognized an exception to the general rule for public defenders while they are performing the traditional function of counsel for criminal defendants. See Polk County v. Dodson, 454 U.S. 312, 317 (1981); Rodriquez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997); Housand v. Heiman, 594 F.2d 923, 924-25 (2d Cir. 1979). "[W]hen representing an indigent defendant in a state criminal proceeding, the public defender does not act under color of state law for the purposes of section 1983 because he `is not acting on behalf of the State; he is the State's adversary.'" West, 487 U.S. at 50 (quoting Polk County, 454 U.S. at 323 n.13).

**Page 14**

Osuch alleges that defendant Lopez, his public defender in a state criminal matter, afforded him ineffective assistance in that he ignored the defective warrant application and the fact that Osuch was taking various medications for mental health problems at the time of the alleged assault and, instead, urged Osuch to plead guilty to the charge.

Representing a client at trial is part of the traditional function of counsel to a criminal defendant. Because public defenders do not act under color of state law while defending a criminal action, these claims against defendant Lopez are not cognizable under section 1983.

If a public defender conspires with a state official to deprive a criminal defendant of his constitutional rights, however, the public defender is deemed to have been acting under color of state law. See Tower v. Glover, 467 U.S. 914, 920-22 (1984). Here, Osuch alleges that defendant Lopez conspired with the prosecutor to deprive him of due process.

The Second Circuit has held that to state a claim of conspiracy under section 1983, the complaint must contain more than mere conclusory allegations. See Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (restating previous holding that vague, general or conclusory allegations of

**Page 15**

conspiracy are insufficient to withstand motion to dismiss); Dwares v. City of New York, 985 F.2d 94, 99-100 (2d Cir. 1993; (citing cases). In this case, Osuch presumes that all of the alleged deficiencies are attributable to the purported conspiracy. He fails to allege any facts showing that defendant Lopez and the prosecutor agreed to obtain his conviction. This assumption is insufficient to state a cognizable claim for conspiracy.

Further, even if Osuch had stated a claim of conspiracy, the claims against defendant Lopez should be dismissed. If Lopez were to prevail on his claim for damages, the court would have to conclude that he was afforded ineffective assistance of counsel. Thus, Osuch's conviction necessarily would be called into question.

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under [section] 1983. Thus, when a state prisoner seeks damages in a [section] 1983 suit, the district

Page 16

court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction has already been invalidated.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (footnote omitted). Osuch does not indicate whether he filed a direct appeal or a state habeas petition challenging his conviction. Because Osuch fails to demonstrate that his conviction has been invalidated, he fails to state a claim cognizable under section 1983. Thus, the court concludes that any amendment would be futile. The claims for damages against defendant Lopez are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

In addition, Osuch sees declaratory relief against defendant Lopez. He asks the court to state that defendant Lopez violated his constitutional rights and afforded him ineffective assistance of counsel, that is, that he has proven his claims against defendant Lopez. The court has concluded that Osuch's claims against defendant Lopez are not cognizable at this time. Thus, his requests for declaratory relief are dismissed as well.

III. Conclusion

The complaint is **DISMISSED** without prejudice pursuant to

Page 17

28 U.S.C. § 1915(e)(2)(B)(ii). Osuch may refile his claims after his conviction has been called into question provided he can allege facts to correct the deficiencies identified above. Any appeal from this order would not be taken in good faith. The Clerk is directed to close this case.

**SO ORDERED.**

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved

FOX v. CITY OF NEW YORK, (S.D.N.Y. 2004)

ANTHONY FOX, Plaintiff, v. THE CITY OF NEW YORK, et al., Defendants

03 Civ. 2268 (FM)

United States District Court, S.D. New York

April 19, 2004

**MEMORANDUM DECISION**

FRANK MAAS, Magistrate Judge

I. Introduction

In this pro se civil rights action pursuant to 42 U.S.C. § 1983, plaintiff Anthony Fox ("Fox") alleges that the defendants violated both federal and state law in connection with his arrests on March 6 and June 8, 2001, and subsequent prosecution. Defendant Robert Morgenthau ("Morgenthau"), the District Attorney of New York County, has filed a motion to dismiss the amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.[fn1] The remaining defendants ("City Defendants") also have filed their own motion seeking the same relief. Finally, as part of his papers opposing the defendants' motions, Fox has cross-moved for summary judgment. In September 2003, the parties

**Page 2**

consented to the assignment of this case to me in accordance with 28 U.S.C. § 636(c). (See Docket No. 22). Pursuant to that grant of jurisdiction, for the reasons set forth below, the defendants' motions are granted in part and denied in part. Additionally, the cross-motion for summary judgment is denied.

II. Facts[fn2]

Because Fox is a pro se litigant, the Court may rely on both his amended complaint and his motion papers in assessing the legal sufficiency of his claims. See Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999); Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997): Donahue v. United States Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990). The Court may also consider any other documents which are referenced in his papers or which are properly the subject of judicial notice. See Tarshis v. Riese Org., 211 F.3d 30, 39 (2d Cir. 2000), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Kramer v. Time Warner. Inc., 937 F.2d 767, 773 (2d Cir. 1991).

**Page 3**

Thus construed, Fox's pleadings allege as follows:

A. First Arrest

On March 3, 2001, Fox's girlfriend, Annie Gardner ("Gardner"), placed a "911" call during which she stated that Fox had threatened her with a weapon. (See Am. Compl. ¶ IV(2); Pl.'s D.A. Opp. at l;Pl.'s City Opp. at 2). Several police officers went to the scene, where they spoke with Fox and Gardner, but made no arrests. (Pl's City Opp. at 2). Instead, the officers advised Gardner that they would file her complaint with the precinct. (Id.).

On March 6, 2001, Detective Patricia McGovern ("Det. McGovern"), who was assigned to the Police Department's "Domestic [V]iolence [I]nvestigative [U]nit," questioned Fox and Gardner at their residence. (Id.). Although Gardner told Det. McGovern that "she no longer wanted to pursue [the] complaint," Det. McGovern directed Fox to "accompany her and her partner to the [precinct] in order for her to call the district attorney and have the charges dropped." (Id.). Once at the precinct, Det. McGovern arrested Fox without a warrant pursuant to Morgenthau's directive. (Id.; Pl.'s D.A. Opp. at 7).

Later that day, Det. McGovern signed a misdemeanor complaint, which stated that Gardner had reported that Fox "c[a]me at [Gardner] while pointing a long metal rod" and threatened "GET OFF THE CORNER OR I'LL KICK YOUR ASS, thereby placing [her] in fear of serious physical injury." (See Gugel Decl. Ex. B). The

**Page 4**

complaint charged Fox with with Menacing in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. (Id.). Fox was released from custody the following day, and the charges against him were dismissed on April 21, 2001. (See Am. Compl. ¶ IV(4)).

B. Second Arrest

On June 8, 2001, Theresa Woody ("Woody"), another acquaintance of Fox, called "911" to report that Fox had assaulted her. (Pl.'s D.A. Opp. at 2; Pl's City Opp. at 3). When Officer Michael Palombo ("Palombo") arrived at the scene, Woody told him that Fox had caused her to have a swollen left cheek by punching her in the face, had scratched her neck while choking her, and had used her cane to hit her on her back. (See Gugel Decl. Ex. C). A police report concerning the incident indicated that Woody's allegations were confirmed by Albert Soto, a bystander who had attempted to come to her aid.[fn3] (See id. Ex. D).

After speaking to Woody and Soto, (see id.). Officer Palombo arrested Fox without a warrant. (Am. Compl. ¶¶ IV(1), IV(4)). Following the arrest, Officer Rubin Tejada ("Tejada") recovered a glassine envelope from Fox's bag. (Id. ¶ IV(4)).

**Page 5**

Fox alleges that he was arrested on June 8th pursuant to a custom and practice initiated by Morgenthau which "denies defendant's [sic] [the] possibilit[y] of being exonerated before [their] arrest in light of discovering exculpatory evidence." (Id. ¶ IV(1)). More specifically, Fox contends that he asked to file a cross-complaint against Woody because she had stolen his cell phone before calling "911." (Id.; Pl.'s City Opp. at 3). Although Fox showed the officers a "receipt" in an effort to verify this allegation, Officer Palombo allegedly declined to arrest Woody, stating that Woody was a personal acquaintance of his and that "there was a policy implemented by the District Attorney's office that was adhered to by the N.Y.P.D. forbid[d]ing the filing of cross-complaints." (See Pl.'s City Opp. at 1, 13).

Following Fox's arrest, Officer Palombo signed a criminal complaint, dated June 8, 2001, which charged Fox with two counts of Assault in the Third Degree and one count each of Criminal Possession of a Weapon in the Fourth Degree, Criminal Possession of a Controlled Substance in the Seventh Degree, and Attempted Assault in the Third Degree. (See Gugel Decl. Ex. C at 1-2). In that complaint, Palombo alleged, on the basis of his training and experience, that the glassine envelope seized from Fox's bag by Tejada contained crack cocaine residue. (Id. at 2). After the complaint was filed, Fox was detained for one week before he was able to post bail. (Pl's D.A. Opp. at 2). The charges against him arising out of the June 8th arrest eventually were dismissed on September 4, 2001. (See Am. Compl. ¶ IV(4)).

**Page 6**

The glassine envelope that Tejada had recovered from Fox's bag
subsequently was tested and found not to contain any controlled
substances. (Pl's City Opp. at 4). Although Fox alleges that "there was
no documentation of verified actual injuries of [the] complainant" and
that no property was vouchered according to the On Line Booking Sheet,
(see Am. Comp. ¶¶ IV(1), IV(5)), the Property Clerk's Invoice related to
the June 8th arrest indicates that Officer Palombo submitted photographs
of the "wooden cane used as a weapon" and Woody's swollen cheek and
scratched neck. (Gugel Decl. Ex. E). The invoice further indicates that
certain "narcotics residue" was vouchered under a related invoice
number. (Id.).

   C. Complaint

   Fox's unsigned amended complaint is dated "July ___, 2003," and was
received by the Pro Se Office of this Court on July 10, 2003. (See Docket
No. 11). In the amended complaint, Fox raises a host of federal and state
claims, contending that his rights under the Fourth Amendment were
violated because he was falsely arrested and imprisoned in connection
with both of the criminal cases brought against him, that he was the
victim of malicious prosecution by the District Attorney's Office, and
that Officers Palombo and Tejada conspired to falsify the June 8th drug
charges against him. (Am. Compl. ¶¶ IV(1), IV(2), IV(4), IV(5)). Fox
further contends that he was denied his Fourteenth Amendment equal
protection rights because of Morgenthau's policy against "counter
complaints" and because defendants with prior criminal records are
treated

**Page 7**

differently, that he was denied his Fourteenth Amendment due process
rights because of a custom and practice pursuant to which criminal
defendants are not afforded an opportunity to exonerate themselves before
being arrested, and that the City is liable to him on a respondeat
superior theory because it failed to train its police officers not to
follow Morgenthau's illegal policy concerning cross-complaints. (Id. ¶¶
IV(1)-IV(4)).

   Fox has named as defendants, in both their personal and official
capacities, Morgenthau, Officers Palombo and Tejada, and Det. McGovern.
(See id. ¶ V). He also has named the City as a defendant. (See id. ¶
IV(3)). The sole relief that he seeks is the award of $5 million in
compensatory and punitive damages. (Id. ¶ V).

   Insofar as he seeks to bring state law claims against Morgenthau or the
City Defendants in their official capacities, Fox has not alleged that he
filed any notice of claim. Additionally, the City has represented —
albeit, on information and belief — that no such notice was filed.
(Gugel Decl. ¶ 8).

III. Discussion

   A. Standard of Review

   A court reviewing a motion to dismiss a complaint pursuant to Rule
12(b)(6) must accept the material factual allegations of the complaint as
true and draw all reasonable inferences in the plaintiff's favor. See
Leatherman v. Tarrant County Narcotics Intelligence & Coordination
Unit, 507 U.S. 163, 164 (1993); Hishon v. King & Spalding, 467 U.S. 69,
73 (1984); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.

**Page 8**

1994). A claim may be dismissed only when it has been established "beyond
doubt that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41,
45-46 (1957).

   When a plaintiff is proceeding pro se, as here, the complaint must be
held "to less stringent standards than formal pleadings drafted by

lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Thus,
the plaintiff's allegations must be read "liberally" and interpreted "to
raise the strongest arguments that they suggest." Soto v. Walker,
44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787,
790 (2d Cir. 1994)). This principle applies with particular force in
cases such as this in which a pro se plaintiff alleges civil rights
violations. See, e.g., Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993);
Contes v. City of New York, No. 99 Civ. 1597 (SAS), 1999 WL 500140, at *2
(S.D.N.Y. July 14, 1999).

    B. Section 1983 Claims

    Section 1983 provides a means by which a person alleging a
constitutional deprivation may bring a claim, but does not itself create
any substantive rights. Sykes, 13 F.3d at 519. Accordingly, to state a
claim under Section 1983, a plaintiff must allege that a defendant acting
under color of state law has deprived him of a right, privilege, or
immunity guaranteed by the United States Constitution. 42 U.S.C. § 1983;
Barnes v. City of New York, No. 96-CV-2702, 1998 WL 19485, at *4
(E.D.N.Y. Jan. 20, 1998).

**Page 9**

    1. False Arrest and False Imprisonment

    Fox claims that his March 6th and June 8th arrests violated the Fourth
Amendment because he was falsely arrested and falsely imprisoned. (See
Am. Compl. ¶¶ IV(1), IV(2)). "False arrest is simply an unlawful detention
or confinement brought about by means of an arrest rather than in some
other way and is in all other respects synonymous with false
imprisonment." Vasquez v. City of New York, No. 99 Civ. 4606 (DC), 2000
WL 869492, at *3 (S.D.N.Y. June 29, 2000) (quoting Covington v. City of
New York, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J., dissenting));
see also Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York,
the tort of false arrest is synonymous with that of false
imprisonment.").

    To state a claim for false arrest under either Section 1983 or New York
law, a plaintiff must establish that "([a]) the defendant intended to
confine him, ([b]) the plaintiff was conscious of the confinement, ([c])
the plaintiff did not consent to the confinement, and ([d]) the
confinement was not otherwise privileged." Posr, at 97 (citations
omitted); see also Fernandez v. City of New York, No. 02 Civ. 8195
(JGK), 2003 WL 21756140, at *3, *5 (S.D.N.Y. July 29, 2003) (false arrest
claim under Section 1983 is "substantially the same" as false
imprisonment claim under New York law) (quoting Weyant v. Okst,
101 F.3d 845, 852 (2d Cir. 1996)); Broughton v. State, 37 N.Y.2d 451, 456
(1975) (setting forth elements of false imprisonment claim under New York
law). "Because probable cause to arrest constitutes justification, there
can be no

**Page 10**
claim for false arrest when the arresting officer had probable cause to
arrest the plaintiff." Escalera v. Lunn, No. 03-7121, 2004 WL 534476, at
*4 (2d Cir. Mar. 18, 2004) (citing Weyant). This is true even when the
plaintiff is later acquitted. Vasquez, 2000 WL 869492, at *3 (citing
Weyant).

    In this case, the first three elements of the claim are undisputed.
Accordingly, the key question is whether there was probable cause for the
arrests. This assessment must be based on the "totality of the
circumstances." Henry v. City of New York, No. 02 Civ. 4824 (JSM), 2003
WL 22077469, at *1 (S.D.N.Y. Sept. 8, 2003) (citing Illinois v. Gates,
462 U.S. 213, 230-32 (1983)). "In general, probable cause to arrest
exists when the officers have knowledge or reasonably trustworthy
information of facts and circumstances that are sufficient to warrant a
person of reasonable caution in the belief that the person to be arrested
has committed or is committing a crime." Weyant, 101 F.3d at 851. The

probable cause determination must be made by looking at "what the officer
knew at the time of the arrest and whether the officer was reasonable in
relying on that knowledge." Black v. Town of Harrison, No. 02 Civ. 2097
(RWS), 2002 WL 31002824, at *6 (S.D.N.Y. Sept. 5, 2002); Ricciuti v. New
York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). If the
information leading to the arrest comes from a "putative victim or an
eyewitness, probable cause exists, . . . unless the circumstances raise
doubt as to the person's veracity." Curley v. Village of Suffern,
268 F.3d 65, 70 (2d. Cir. 2001) (citations omitted). Police officers also
are entitled to rely on the reports

**Page 11**
of their fellow officers in the course of making a probable cause
determination. Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000);
Brogdon v. City of New Rochelle, 200 F. Supp.2d 411, 421 (S.D.N.Y.
2002).

   Contrary to Fox's assertions, the police officers who responded to
Gardner's March 3rd call clearly had probable cause to effect an arrest
after they learned from Gardner that Fox had threatened her while
brandishing a long metal rod. Although Fox contends that this conclusion
was unwarranted in the absence of any independent evidence "that [he]
possessed a weapon or had actually threatened his girlfriend," (Pl's D.A.
Opp. at 1), the police were not required to explore and eliminate every
potentially plausible claim of innocence as part of their pre-arrest
investigation. Ricciuti, 124 F.3d at 128.

   Additionally, because the officers who interviewed Gardner on March 3rd
had probable cause to believe that Fox was guilty of menacing and
criminal possession of a weapon, Det. McGovern was entitled to rely on
their findings in attesting to the accuracy of her complaint a few days
later. The fact that Gardner allegedly had decided in the interim that
she did not wish to pursue her complaint, even if established, did not
amount to a recantation of her prior statement to the police. Therefore,
as a matter of law, there was probable cause for Fox's arrest. As a
consequence, the defendants are entitled to the dismissal of Fox's false
arrest and false imprisonment claims arising out of the

**Page 12**
March 6th arrest.[fn4] Indeed, even the eventual dismissal of the charges
does not vitiate the probable cause for the arrest. See Michigan v.
DeFillippo, 443 U.S. 31, 36 (1979) ("the mere fact that the suspect is
later acquitted . . . is irrelevant to the validity of the arrest").

   Turning to the June 8th arrest, Fox concedes that Woody told the
arresting officers upon their arrival that he "had assaulted her and
[one] of her friends [and] also attempted to assault [one] of her other
friends that was also present." (Pl.'s City Opp. at 3). Consistent with
this statement, the complaint signed by Officer Palombo alleges that when
the officers arrived, Woody told them that Fox had punched her "about the
face," choked her, and hit her with her own cane. (See Gugel Ex. C).
While this alone would have been a sufficient basis for an arrest, see,
e.g., Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994); United States
v. Williams, 181 F. Supp.2d 267, 280 (S.D.N.Y. 2001), the police also had
corroboration of Woody's allegations. Thus, the police report relating to
the incident states that Albert Soto, a witness not involved in the
altercation, had attempted to defend Woody and concurred with her
rendition of the facts to the police officers. (See Gugel Decl. Ex. D).
In addition, the police vouchered photographs of Woody which reflected
her "swollen cheek," the "scratches to [her] neck," and the

**Page 13**
wooden cane allegedly used as a weapon. (See id. Ex. E). There
consequently was ample cause for Fox's arrest even if, as he alleges, the
glassine envelope seized from his bag was later found not to contain any
controlled substances. The defendants are therefore entitled to the
dismissal of the false arrest and false imprisonment claims arising out
of Fox's second arrest.[fn5]

2. Malicious Prosecution

Fox also claims that the decisions to proceed against him in connection with the March 6th and June 8th charges constituted malicious prosecution. (Am. Compl. ¶ IV(4)). To state a claim of malicious prosecution under either Section 1983 or state law, Fox must allege that (a) a proceeding was initiated against him, (b) the proceeding was terminated in his favor, (c) there was a lack of probable cause to initiate the proceeding and (d) the prosecution was motivated by malice. See Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997); Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Posr, 944 F.2d at 100. To satisfy the second required element, a plaintiff must allege that the disposition of the charges against him is "indicative of innocence." Russell, 68 F.3d at 36 (citations omitted). To satisfy the fourth element, the plaintiff must allege that the defendant "commenced the prior criminal proceeding due to a wrong or improper motive,
**Page 14**
something other than a desire to see the ends of justice served." Rounseville v. Zahl, 13 F.3d 625, 630(2d Cir. 1994).

In his papers, Fox contends that all of the charges against him were "ultimately dismissed for failure to prosecute . . . and were sealed favorably in [his] behalf." (Pl's City Opp. at 5). The New York Court of Appeals has described "the question of what exactly constitutes a `favorable termination' [as] a `conundrum that has beset the law of malicious prosecution.'" Bacquie v. City of New York, No. 99 Civ. 10951 (JSM), 2000 WL 1051904, at *3 (S.D.N.Y. July 31, 2000) (quoting Smith-Hunter v. Harvey, 95 N.Y.2d 191, 200 (2000) (Rosenblatt, J., concurring)); see also Loeb v. Teitelbaum, 432 N.Y.S.2d 487, 493-94 (2d Dep't 1980) (dismissal based on prosecutor's failure to proceed constitutes favorable termination under New York law). In this case, there is no need to delve into the precise circumstances leading to the dismissal of the charges against Fox because one of the essential elements of a malicious prosecution claim is a showing that there was a lack of probable cause to initiate the prosecution. Here, as noted above, there plainly was cause to arrest Fox in connection with both of the criminal cases brought against him on the basis of the complaining witnesses' allegations alone. Although probable cause to arrest and probable cause to prosecute are not always interchangeable concepts, see Jones v. Maples/Trump, No. 98 Civ. 7132 (SHS), 2002 WL 287752, at *6 (S.D.N.Y. Feb. 26, 2002), Fox has not alleged that any new facts had surfaced between the time of his arrests and the initiation of the prosecutions against him
**Page 15**
which might vitiate a finding of probable cause. Consequently, even if Morgenthau and his subordinates were motivated by malice in deciding to proceed against Fox, his malicious prosecution claim would fail as a matter of law because there was probable cause to proceed against him.

3. Section 1983 Conspiracy Claims

a. Drug Charge

Fox also contends that Officers Tejada and Palombo violated Section 1983 by conspiring to falsify the drug charges against him. (Am. Compl. ¶ IV(5)). The elements of a Section 1983 conspiracy claim are "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Prior to the decision in Swierkiewicz v. Sorema N.A., plaintiffs alleging that they were the victims of a conspiracy to deprive them of their constitutional rights were typically required to set forth more than boilerplate allegations with regard to such claims, see Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002); Pangburn, 200 F.3d at 72; Dwares v. City of New York, 985 F.2d 94, 99-100 (2d Cir. 1993), and

to provide some "details of time and place and the alleged effect of the conspiracy." Dwares, 985 F.2d at 100 (quoting 2A James Wm. Moore et al., Moore's Federal Practice ¶ 8.17[6], at 8-109-8-110 (2d ed. 1992)).

**Page 16**

In Swierkiewicz, the Supreme Court held that the simplified pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure applies generally to all civil actions. Swierkiewicz, 534 U.S. at 512. Accordingly, some courts have concluded that Section 1983 conspiracy claims are now subject only to a requirement of notice pleading. See, e.g., Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002); In re Bayside Prison Litigation, 190 F. Supp.2d 755, 765 (D.N.J. 2002). Although two judges in this District have questioned the continuing vitality of the Pangburn/Ciambriello line of cases, they both found it unnecessary to reconcile such cases with Swierkiewicz because the complaints that were the subject of the motions to dismiss were adequate to meet the prior Second Circuit standard. See Estate of Morris v. Dapolito, 297 F. Supp.2d 680, 691 n.8 (S.D.N.Y. 2004) (Conner, J.); Bullard v. <City> <of> <New> <York>, 240 F. Supp.2d 292, 301-02 (S.D.N.Y. 2003) (Koeltl, J.).

In this case, <Fox> contends that the police filed false narcotics charges against him, but his complaint is conspicuously silent as to whether the glassine envelope found in his bag ever contained crack cocaine. On the other hand, Fox does assert that the police laboratory was unable to detect any drug residue on the glassine envelope. (Pl's City Opp. at 4). Fox also has alleged that Tejada (who found the glassine envelope) and Palombo (who stated that it contained crack cocaine residue) conspired to charge him falsely with criminal possession of a controlled substance. (See Am. Compl. ¶ IV(5)). Finally, Fox has set forth several overt acts allegedly undertaken in furtherance of the

**Page 17**

conspiracy, including Tejada's search of his bag outside his presence. (See id.). While these allegations clearly would be inadequate under the prior case law in this Circuit, in light of the minimal showing required by Swierkiewicz, Fox arguably has adequately pleaded a Section 1983 conspiracy claim against Officers Tejada and Palombo arising out of his arrest on a drug charge.

b. Cross-Complaints

Fox's amended complaint also alleges that Morgenthau and the police defendants conspired to create and carry out a "[c]ustom and [p]ractice" that prevents criminal defendants from filing cross-complaints against their accusers. (See Am. Compl. ¶ IV(1)). Fox further alleges that Office Palombo told him "that there was a policy implemented by the District Attorney's office that was adhered to by the N.Y.P.D. forbid[d]ing the filing of cross-complaints." (Pl's City Opp. at 13). Fox claims that the defendants violated his Fourteenth Amendment due process and equal protection rights because the no cross-complaint policy was inherently discriminatory and prevented him from obtaining "exculpatory evidence" concerning Woody prior to his June 8th arrest. (See Am. Compl. ¶ IV(1); Pl's D.A. Opp. at 11).

A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Nevertheless, when a governmental entity enacts a blanket proscription against cross-complaints, which of the participants in a dispute will be arrested can turn

**Page 18**

on the happenstance of who first notifies the police that there is a problem. For that reason, the Second Circuit has held that a blanket no cross-complaint policy "bears no rational relationship to the legitimate governmental interest in impartial law enforcement and thus violate[s] . . . equal protection." Myers v. County of Orange, 157 F.3d 66, 76 (2d

Cir. 1998).

Notwithstanding Myers, the respondents argue that the decisions in Lewis v. New York City Police Dep't, No. 99 Civ. 0952 (RWS), 2000 WL 16955, at *4 (S.D.N.Y. Jan. 10, 2000), and Johnson v. Police Officer # 17969, No 99 Civ. 3964 (NRB), 2000 WL 1877090, at *6 (S.D.N.Y. Dec. 27, 2000), compel a contrary conclusion. Neither of those cases is controlling here. To the extent that Lewis stands for the proposition that a policy of refusing to allow cross-complaints under any circumstance is constitutional, it obviously is contrary to the Second Circuit's decision in Myers. Additionally, Johnson is factually inapposite. In that case, an arrestee sought to file a complaint that a police officer had used excessive force while effecting his arrest. Johnson, 2000 WL 1877090, at *6. Judge Buchwald rejected the notion that the refusal to entertain such a complaint amounted to a constitutional violation, stating that a plaintiff does not have a right to file such a civilian complaint. Id. There was no suggestion, however, that the New York City Police Department had a blanket policy precluding the filing of civilian complaints. See id.

**Page 19**

Here, by comparison, Fox has alleged that Palombo told him that there was a policy prohibiting the filing of cross-complaints by arrestees. (Pl's City Opp. at 13). While a police officer's individualized determination that a particular person should not be arrested does not rise to the level of a constitutional violation, Fox's allegations regarding the existence of a blanket policy do state a legally sufficient equal protection claim. See Myers, 157 F.3d at 76 (declining to decide whether such a blanket policy also violates the Fourteenth Amendment's Due Process Clause); see also Rennols v. City of New York, No. OO-CV-6692, 2003 WL 22427752, at * 5 (E.D.N.Y. Oct. 23, 2002) ("an explicit policy is necessary for a court to find an equal protection violation of the type found in Myers"). Nonetheless, because there was probable cause to arrest Fox, he was not denied due process in violation of the Fourteenth Amendment. See id.[fn6]

C. Section 1985(3) Claims

Section 1985(3) is narrower in scope than Section 1983. Blankman v. County of Nassau, 819 F. Supp. 198, 205 (E.D.N.Y. 1993). To state a claim under 42 U.S.C. § 1985(3), a plaintiff must plead "(1) a conspiracy; (2) for the purpose of

**Page 20**

depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of the citizens of the United States." Mian v. Donaldson. Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993) (citing United Bhd. of Carpenters. Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)).

In Griffin v. Breckenridge, 403 U.S. 88 (1971), the Supreme Court considered the legal sufficiency of a Section 1985(3) claim brought by black citizens of Mississippi against white citizens who allegedly had assaulted them on the public highways of the State to prevent them from enjoying their equal rights. In the course of holding that the statute reaches such private race-based conspiracies, provided that they are motivated by an "invidiously discriminatory animus," the Court stated — in language which is partly dictum — that the animus underlying the defendants' conspiratorial acts must be based on the plaintiffs' race "or perhaps otherwise class-based." Id. at 102. Subsequently, in United Brotherhood of Carpenters, the Court observed that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." United Bhd. of Carpenters. Local 610, 463

U.S. at 836.

Here, Fox does not contend that the defendants discriminated against him on the basis of his race or membership in a suspect class. Instead, he articulates two ways

**Page 21**

in which the defendants allegedly conspired to discriminate against him. First, he suggests that the defendants' concerted refusal to let him file a cross-complaint violated Section 1985(3) because the policy that they were following discriminates against "criminal defendants as a class of individuals . . . solely on the fact that they are named as the wrongdoer." (Pl's City Opp. at 6). Second, he alleges that the police officers conspired with Morgenthau to arrest him based "solely on the fact that [he] had a prior arrest and conviction record." (See Am. Compl. ¶ IV(2)). The common thread of both of these claims is that the defendants allegedly acted with animus against criminal defendants. Whatever the precise contours of a Section 1985(3) conspiracy claim may be, it is clear that such discrimination against criminal defendants is not within the narrow ambit that Congress intended when it enacted Section 1985(3) as part of Reconstruction-era legislation. See, e.g., United Bhd of Carpenters, 463 U.S. at 838 (statute does not reach conspiracies motivated by "economic or commercial animus"); Askew v. Bloemker, 548 F.2d 673, 678 (7th Cir. 1976) (plaintiffs whose homes were raided by state police could not bring a Section 1985(3) suit because they shared no common characteristics prior to the defendants' actions); Sidepockets, Inc. v. McBride, No. 3:03CV742, 2004 WL 555238, at *2 (D.Conn. Mar. 15, 2004) (purveyors of adult entertainment are not a cognizable class under Section 1985(3)); Parks v. Edwards, No. 03-CV-5588, 2004 WL 377658, at *4 (E.D.N.Y. Mar. 1, 2004) (violent offenders are not entitled to claim class-based protection under Section 1985(3)); Dix v. City of New York,

**Page 22**

No. 01 Civ. 6186 (LAP), 2002 WL 31175251, at *10 (S.D.N.Y. Sept. 30, 2002) (discrimination based on sexual orientation will not support a Section 1985(3) claim). Accordingly, Fox's Section 1985(3) claim must be dismissed with prejudice.[fn7]

D. Absolute and Qualified Immunity

A government official accused of a constitutional tort may, in appropriate circumstances, invoke either absolute or qualified immunity. Absolute immunity provides "officials who perform `special functions' . . . absolute protection from [Section 1983] damages liability." Bernard v. County of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004). Among the officials accorded such deference are those who are engaging in prosecutorial, judicial, or legislative functions. See Burns v. Reed, 500 U.S. 478, 489-90 (1991); Mireles v. Waco, 502 U.S. 9, 11-13 (1991) (per curiam); Sup. Ct. of Va. v.

**Page 23**

Consumers Union of U.S., Inc., 446 U.S. 719, 732 (1980). In determining whether absolute immunity is applicable, the focus is on the function being performed, not the official's title. Bernard, 356 F.3d at 503. Thus, prosecutors are entitled to absolute immunity "when they function as advocates for the state in circumstances `intimately associated with the judicial phase of the criminal process.'" Id. at 502 (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)). For example, "prosecutors are [absolutely] immune from liability in suits under Section 1983 that arise from their prosecutorial actions in initiating and presenting the State's case in court." Murphy v. Neuberger, No. 94 Civ. 7421 (AGS), 1996 WL 442797, at *10 (S.D.N.Y. Aug. 6, 1996). On the other hand, a prosecutor is not entitled to absolute immunity when he "supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest — that is, when he performs functions normally associated with a police investigation." Richards v. City of New York, No. 97 Civ. 7990 (MBM), 1998 WL 567842, at *2 (S.D.N.Y. Sept. 3, 1998) (citing Burns, 500 U.S. at 493).

Despite the limited availability of absolute immunity, a government official performing discretionary functions is also shielded from liability for civil damages under the doctrine of qualified immunity "if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." Mandell v. County of Suffolk,

**Page 24**

316 F.3d 368, 385 (2d Cir. 2003). To determine whether a particular right was "clearly established" at the time that an act occurred, the Court must consider "three related factors: `whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful.'" Petty v. Goord, No. 00 Civ. 803 (MBM), 2002 WL 31458240, at *5 (S.D.N.Y. Nov. 4, 2002) (quoting Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir. 1995)). Even when these prerequisites to qualified immunity are satisfied, the defense only protects defendants to the extent that they have been sued in their individual capacity, and it protects them only against claims for damages, not claims for equitable relief. Rodriguez v. <City> <of> <New> <York>, 72 F.3d 1051, 1065 (2d Cir. 1995).

    1. Morgenthau

  <Fox> alleges that Morgenthau played a role in his false arrest and false imprisonment, participated in his malicious prosecution, and conspired with the police officers who made the June 8th arrest to adopt and put into practice a blanket procedure which denied him the right to file a cross-complaint against Woody.

  Turning to the first of these claims, Fox apparently contends that Morgenthau played a role in the decision to effect at least one of his warrantless arrests. (See Pl's D.A. Opp. at 2, 4). Since the investigative stage of a criminal prosecution is not part of a prosecutor's core duties, Morgenthau is not entitled to absolute immunity

**Page 25**

with respect to this claim. It is, of course, highly doubtful that Morgenthau, who heads one of the largest prosecutorial offices in the nation, played any role in the run-of-the-mill arrests at issue in this case. See Campbell v. Giuliani, No. 99-CV-2603, 2000 WL 194815, at *4 n.7 (E.D.N.Y. Feb. 16, 2000) (making a similar observation regarding the District Attorney of Kings County). However, even if Fox were able to show that Morgenthau personally intervened, the existence of probable cause for both of Fox's arrests establishes that Morgenthau is entitled to qualified immunity with respect to Fox's false arrest and false imprisonment claims.[fn8]

  The malicious prosecution claim against Morgenthau also must be dismissed because "[a] prosecutor has absolute immunity in connection with the decision whether to commence prosecution." See Covington v. City of New York, 916 F. Supp. 282, 287 (S.D.N.Y. 1996) (citing Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995), Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993)); Lawson v. City of New York, No. 00 Civ. 2704 (JSM), 2002 WL 1313644 (S.D.N.Y. June 13, 2002) (dismissing claim of malicious prosecution against Morgenthau on absolute immunity grounds).

  Finally, Fox alleges that Palombo told him, in substance, that the New York City Police Department follows a blanket "no cross-complaints" policy which was

**Page 26**

promulgated by Morgenthau's office and which prevented him from filing a cross-complaint against Woody. (Pl's City Opp. at 13). As previously noted, such a blanket policy, if shown to exist, would violate Fox's

rights under the Equal Protection Clause of the Fourteenth Amendment. (See supra section III. B. 3. b). Moreover, the unconstitutionality of such an unyielding policy plainly was established several years before Fox's arrest when the Second Circuit issued its decision in Myers. See Myers, 157 F.3d at 76.

Because the alleged policy relates to a pre-prosecution phase of Fox's case, Morgenthau is not entitled to absolute immunity with respect to this claim. See Burns v. Reed, 500 U.S. at 493; Richards, 1998 WL 567842, at *2. Nevertheless, a prosecutor may be entitled to qualified immunity when he is acting as an administrator or investigator, rather than as the official charged with initiating and pursuing criminal prosecutions. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Bernard, 356 F.3d at 502. In this case, however, Fox's opposition papers make it clear that the "no cross-complaint" claim for damages is being brought against Morgenthau solely in his official capacity. (See Pl's D.A. Opp. at 3 ("[I]n his `Official Capacity' [Morgenthau] is responsible . . . for adopting and implementing all Polic[ies], Customs or Practices on an administrative level"). For this reason, qualified immunity is inapplicable to this claim. See Rodriguez, 72 F.3d at 1065.

**Page 27**

2. Police Defendants

In his amended complaint, Fox claims that the actions of Det. McGovern and Officers Palombo and Tejada gave rise to the constitutional torts of false arrest, false imprisonment, and malicious prosecution. However, as noted above, the defendants had probable cause to effect his arrests on the basis of the complaining victims' statements. Moreover, even if the police did not have probable cause, it was objectively reasonable for them to believe that they did. See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) (quoting Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997) ("[A]rguable probable cause" exists "when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed.")). The police defendants consequently are entitled to qualified immunity with respect to these three tort claims to the extent that they are brought against them in their individual capacities.

In his amended complaint, Fox also claims that Officers Palombo and Tejada conspired to falsify the narcotics charge that was brought against him following the seizure of a glassine envelope from his bag on June 8, 2001. (Am. Compl. ¶ IV(5)). The only factual support that Fox sets forth with respect to this claim is that the glassine envelope seized by Officer Tejada was later "determined by the lab expert to

**Page 28**

contain no controlled substance."[fn9] (Pl.'s City Opp. at 4). Fox alleges that, despite the lab report, the police and Morgenthau "continued to prosecute [him] with no probable cause." (Id.). Indeed, he theorizes that Officer Tejada "entered into a furtherance of a conspiracy to falsely charge [him] for crimes he did not commit to cover [his] illegal false arrest." (Pl's City Opp. at 4).

The availability of qualified immunity in connection with this Section 1983 claim cannot be resolved at this early stage because it is unclear whether Officers Palombo and Tejada knowingly conspired to charge Fox falsely with drug possession (as the amended complaint seems to allege) or were simply mistaken (as Fox's limited factual allegations suggest).

E. Personal Involvement

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Johnson v. New burgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Wright v. Smith,

**Page 29**

21 F.3d 496, 501 (2d Cir. 1994) (same). Consequently, to recover damages from a supervisor based upon an alleged constitutional violation, a plaintiff must show that the supervisor either directly participated in the violation, learned of it through a report or appeal but failed to take action, created or maintained the policy or custom which gave rise to it, or was grossly negligent in the supervision of subordinates who caused the violation to occur. See Newburgh Enlarged Sch. Dist., 239 F.3d at 254 (quoting Colon).

In his papers, Fox accuses Morgenthau of having been personally involved in only two aspects of the alleged wrongdoing against him. First, he alleges that Morgenthau promulgated a blanket "no cross-complaint" policy which infringed his constitutional rights. (See Am. Compl. IV(1)). Second, he alleges that Morgenthau "ordered [that he be] arrested by Det. . . . McGovern . . . even though there was no showing of a preponderance of evidence in this matter." (Pl.'s D.A. Opp. at 4).

As noted earlier, Fox's "no cross-complaint" policy claim is brought against Morgenthau solely in his official capacity. As such, it does not matter whether Morgenthau was personally involved. Instead, as detailed below, liability will attach only if Fox can establish that the City is liable for a government policy which deprived Fox of his constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).

As also noted earlier, it stretches credulity to suggest that Morgenthau himself gave any instructions to Det. McGovern concerning the March 6th arrest of Fox.

**Page 30**

Nevertheless, even if such an instruction was given, there was probable cause for the arrest and subsequent prosecution of Fox based on Gardner's statements to the officers who responded to the scene several days earlier. Accordingly, even if Morgenthau did intervene personally in the investigation of the first assault charges, his conduct, as a matter of law, does not give rise to any liability under Section 1983.

In sum, insofar as Morgenthau is sued in his personal capacity, the claims against him must be dismissed.

F. Monell Liability

In his amended complaint, <Fox> has named the <City> <of> <New> <York> as a defendant. (Am. Compl. IV(3)). <Fox> has also named Morgenthau as a defendant in his official capacity, (see id. ¶¶ IV(4), V), which is the same as bringing suit against the City. See Kentucky v. Graham. 473 U.S. 159, 165 (1985) ("official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent"). The only claim on which Fox conceivably could prevail against these defendants is that they deprived him of his constitutional rights by adopting and carrying out a blanket policy against the filing of cross-complaints.

Neither the City nor Morgenthau can be held liable for this alleged wrong on a respondeat superior theory. See, e.g., Monell, 436 U.S. at 691 ("a municipality cannot be held liable under § 1983 on a respondeat superior theory"); Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) ("The doctrine of respondeat superior cannot be used to

**Page 31**

establish liability under Section 1983."); Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir. 1973), overruled on other grounds. Graham v. Connor, 490 U.S. 386 (1989) ("The rule in this Circuit is that when money damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required."). Therefore, to prevail on his claim against the City or Morgenthau in his official capacity, Fox must "plead and prove

three elements: (1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." See Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).

The City contends that the requisite showing cannot be made in this case because Fox has alleged only "an isolated occurrence, i.e., the alleged facts of his case." (City Def.'s Mem. of L. at 17). In fact, Fox has alleged the existence of a policy which "regularly denies" defendants their rights under the Equal Protection Clause of the Fourteenth Amendment. (Am. Compl. ¶ IV(1)). He also has alleged that this policy was "initiated" by Morgenthau and that it is "adhered to" by the Police Department. (Id.). Fox therefore plainly has pleaded the existence of a municipal policy which could give rise to Monell liability. But see Rennols, 2003 WL 22427752, at *5 ("unlike in Myers, the New York City Police Department whose officers arrested Plaintiff had no express oral or written policy forbidding them from accepting cross-complaints").

**Page 32**

The crucial question is whether the policy that Fox alleges was applied in connection with his June 8th arrest potentially violated the equal protection rights that the Second Circuit recognized in Myers. There, the plaintiff became involved in an altercation with another person against whom he later sought to file a cross-complaint. Myers, 157 F.3d at 69-72. Because both the plaintiff and his accuser told inconsistent versions of the incident, a jury likely could not have found them both guilty. See id. at 74. In those circumstances, the court concluded that a blanket policy against entertaining cross-complaints violated the plaintiff's equal protection rights. Id. at 74-76.

Here, unlike Myers, an investigation which corroborated Fox's version of events would not have been exculpatory since the theft of Fox's cell phone by Woody was entirely consistent with Woody's version of subsequent events and may have furnished the motive for Fox's alleged assault. Nevertheless, Myers does not suggest that these distinctions should affect the result. Instead, the Second Circuit's holding in Myers was simply that "a policy by a police department or district attorney's . . . office favoring an initial complainant over a later one without giving primary regard to the particular facts involved in the case violates the Equal Protection Clause of the Fourteenth Amendment." Id. at 69. Citing Palombo's alleged statements to him, <Fox> has alleged in his amended complaint that the <City> <of> <New> <York applied such a blanket policy in relation to his June 8th arrest. (See Am. Compl. ¶ IV(1); Pl's City Opp. at 13).

**Page 33**

Accordingly, he has adequately stated a Monell claim against the City and Morgenthau (in his official capacity) arising out of that policy.

H. State Claims

In his amended complaint, Fox also seeks to bring several state law claims. Sections 50-e and 50-i of the New York General Municipal Law provide that a plaintiff wishing to bring such claims against a municipality or its employees must file a notice of claim within 90 days "after the claim arises" and must commence suit within one year and ninety days "after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law §§ 50-e, 50-i (McKinney 1999). These conditions prerequisite to a suit also apply to state law claims interposed in lawsuits brought in federal court. Robinson v. Matos, No. 97 Civ. 7144 (TPG), 1999 WL 225938, at *1 (S.D.N.Y. Apr. 19, 1999) (citing Felder v. Casey, 487 U.S. 131, 151 (1988)). In this case, the latest that any event "happened" was September 4, 2001, when the second criminal complaint against Fox was dismissed. Fox's original complaint in this action is dated February 28, 2003. (Docket No. 2). Accordingly, even if this is deemed to be the date of filing, it is clear that Fox instituted his suit more than one year and ninety days after the events about which he complains. The Court therefore cannot consider Fox's state law claims

even if pendant jurisdiction exists.
**Page 34**

H. Cross-Motion

Fox's papers in opposition to the City Defendants' motion to dismiss contain a cover sheet which suggests that he is cross-moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (See Docket No. 36). No other documentation in support of this "motion" is annexed. Such a motion may only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Local Civ. R. 56.1 (setting forth the procedural requirements for a summary judgment motion). Since there has been no discovery in this case and the relevant facts plainly are disputed, Fox is not entitled to summary judgment.

IV. Conclusion

For the foregoing reasons, the defendants' motion to dismiss the amended complaint is granted except insofar as Fox alleges (a) that Officers Palombo and Tejada conspired to accuse him falsely of criminal possession of a controlled substance; and (b) that the City and defendant Morgenthau, acting in his official capacity, promulgated and employed a blanket "no cross-complaint" policy, which precluded Fox from filing a cross-complaint against Woody. In addition, the plaintiff's cross-motion for summary judgment is denied.
**Page 35**

The Court will hold a telephone conference on April 28, 2004, at 10 a.m., to set a expeditious discovery schedule with respect to these remaining claims. Corporation Counsel is directed to initiate the call.

SO ORDERED.

[fn1] Morgenthau filed his motion to dismiss before Fox served his amended complaint. In his reply memorandum of law, Morgenthau asks that his motion be treated as a motion to dismiss the amended complaint. (See Morgenthau Reply Mem. of E. at 1 n.1).

[fn2] Fox served separate memoranda responding to each of the motions to dismiss. Fox's memorandum in opposition to Morgenthau's motion is hereinafter referred to as "Pl's D.A. Opp.". Fox's memorandum in opposition to the motion filed by the City Defendants is referred to as "Pl's City Opp.". The declaration of Assistant Corporation Counsel Alison E. Gugel, dated October 14, 2003, is referred to as "Gugel Decl."

[fn3] Fox's papers suggest that there may have been a second eyewitness named James Alien who corroborated Woody's allegations. (See Pl's City Opp. at 4 (noting the defendants' failure to produce "sworn depositions in regards to [Fox's] alleged assault and attempted assault of James Alien and Albert Soto"). The defendants have not supplied the Court with any documentation concerning Alien.

[fn4] In his papers, Fox contends that Det. McGovern's complaint concerning the March 3rd incident states that he "possessed a [g]un." (Pl.'s City Opp. at 3). In fact, the complaint simply tracks the language of the second degree menacing statute, which requires that the defendant display "a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 120.14(1) (McKinney 1998). In her complaint, Det. McGovern did not accuse Fox of violating the statute by possessing a firearm. (See Gugel Decl. Ex. B). Instead, she clearly states that he used a "long metal rod" to threaten Gardner. (Id.).

[fn5] In addition to challenging the basis for his own arrest, Fox complains that the police did not arrest Woody on the basis of his allegations that she had stolen his cell phone. While a blanket refusal to entertain cross-complaints may raise equal protection concerns which are discussed infra, the fact that someone else was not arrested on an unrelated charge plainly does not vitiate the probable cause for Fox's own arrest.

[fn6] In Rennols, Judge Garaufis suggested that both Myers and a later unpublished Second Circuit decision, Moustakis v. New York City Police Dep't, No. 98-7972, 1999 WL 357845, at *1 (2d Cir. May 20, 1999), "strongly imply that an explicit policy is necessary for the Court to find an equal protection violation" arising out of a police officer's failure to accept a cross-complaint. Rennols, 2003 WL 22427752, at *5. Construing Fox's amended complaint liberally, as the Court must, it cannot be said that he has pleaded that the no cross-complaint policy was not an express policy of the City. (See, e.g., Pl's City Opp. at 17 ("Plaintiff should be allowed through discovery to obtain a copy of the N.Y.P.D.'s policy and procedure implemented by the New York County D.A.")).

[fn7] The City defendants argue that the Section 1985(3) claim is also barred under the "intracorporate conspiracy doctrine." (See City Defs. Mem.of L. at 12 (quoting Rini v. Zwirn, 886 F. Supp. 270, 291 (E.D.N.Y. 1995) ("[A] corporation generally cannot conspire with its employees or agents as all are considered a single legal entity.")). Although the concept underlying this doctrine is simple, its application often is not. Compare Dombrowski v. Dowling, 459 F.2d 190, 196 (7th Cir. 1972) ("[I]f the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or the act itself will normally not constitute the conspiracy contemplated by [Section 1985(3)]."), with Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 71 (2d Cir. 1976) (distinguishing Rackin v. Univ. of Pa., 386 F. Supp. 992, 1003 (E.D. Pa. 1974), on the basis that each department of the university had "its own responsibilities and functions so that the actions complained of by the plaintiff were clearly not actions of only one policymaking body but of several bodies"). Here, the alleged conspiracy between the Police Department and the District Attorney's Office is arguably closer to the facts of Rackin than those of Dombrowski. However, there is no need to resolve this question here because Fox plainly has not alleged, as he must, that he was the victim of class-based discrimination arising out of his membership in a suspect class.

[fn8] Although probable cause may be vitiated where there is some doubt as to the complainant's veracity, see Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995), no such circumstances are alleged in this case.

[fn9] Fox alleges in his amended complaint that the glassine envelope was never vouchered (according to the Online Booking Sheet) or chemically tested by Officer Tejada or a certified lab tester. (Am. Compl. ¶ IV(5)). The police report regarding the June 8th incident plainly indicates, however, that some narcotics evidence was vouchered under Envelope Number B-055357. (See Gugel Decl. Ex. D). Additionally, in his subsequent submissions in opposition to the City Defendants' motion to dismiss, Fox concedes that a "Police Laboratory Controlled Substance Analysis Report dated 6/14/01" shows that the glassine envelope "was determined by the lab expert to contain no controlled substance." (Pl's City Opp. at 4). It is therefore apparent that there is no basis for Fox's earlier allegation that the envelope never was tested.

**Page 1**

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved